[Civ. No. 20655.   Second Dist., Div. Two.   June 24, 1955.]

MARKET BASKET (a Corporation) et al., Respondents, v. W. C. JACOBSEN, as Director of Agriculture, etc., et al., Appellants (consolidated cases).

HEBER C. ERICKSON et al., Respondents, v. W. C. JACOBSEN, as Director of Agriculture, etc., et al., Appellants.

Edmund G. Brown, Attorney General, and Stanford D. Herlick, Deputy Attorney General, for Appellants.

Latham & Watkins, O'Melveny & Myers and W. I. Titus, Austin H. Peck, Jr., Charles E. Horning, Jr., and Ira M. Price II, for Respondents.

McCOMB, J.—These are consolidated appeals involving two wholesale distributors of imitation ice cream (Jerseymaid Milk Products Company, a copartnership, Los Angeles Superior Court No. 615255, and Market Distributors, a copartnership, Los Angeles Superior Court No. 615297) and two food market chains (Market Basket, a corporation, and Fitzsimmons Stores, a corporation, Los Angeles Superior Court No. 615254). Declaratory relief actions were instituted by plaintiffs to determine the constitutionality of section 580 of the Agricultural Code which reads:

"Imitation ice cream or imitation ice milk shall not be manufactured, processed, frozen, handled, distributed or sold in any place where ice cream or ice milk is manufactured, processed, frozen, handled, distributed or sold."

Each of the complaints contains substantially the same allegations. In seeking declaratory and injunctive relief, plaintiffs contend that the statute is too vague to be constitutionally applied; that defendants as the administrators and enforcement officers of the provisions improperly interpreted the word "place" with respect to retail sales of imitation

ice cream, to mean "store" or "building"; that the statute as interpreted constitutes arbitrary exercise of plenary power in contravention of the state and federal constitutional requirements of equal protection of the law, and in deprivation of due process of the law; that a reasonable interpretation which would render the statute constitutionally acceptable is that ice cream and imitation ice cream would not be deemed sold in the same place if stored or placed in separate cabinets or freezers within the same store.

Following a trial on the merits, the trial court found:

"28. The word 'place' is extremely indefinite and vague. It has no definite or accepted meaning either in common usage or in the business or industry in which plaintiffs are engaged, and is not made reasonably definite or certain by the context in which it is used in said statute or by other proper means of construction.

"29. It is impossible to determine with any degree of certainty or definiteness what act or acts are prohibited by Section 580, California Agricultural Code, in view of the vagueness and uncertainty of the word 'place,' as used therein. Persons, including plaintiffs, who may be subject to the criminal penalties provided for violation of Section 580, are not given any reasonably definite or certain warning by that statute of what conduct is intended to be prohibited thereby."

The court drew the following conclusions of law:

"(1) The meaning of the word 'place', as used in Section 580 of the Agricultural Code of California, is so vague and indefinite that the application or enforcement of said statute in respect to the sale, handling, or distribution of imitation ice cream by plaintiffs, or by any of them, denies to plaintiffs, and to each of them, due process of law, in violation of the Constitution of the United States and the Constitution of the State of California.

"(2) To the extent that Section 580 of the Agricultural Code of California attempts to prohibit the distribution, handling, or sale of ice cream and imitation ice cream by plaintiffs in the same 'place', said statute is unconstitutional and void because it does not inform plaintiffs, or any of them, with reasonable certainty or definiteness what act or acts it intends to prohibit, as required by the Constitution of the United States and the Constitution of the State of California.

"(5) Plaintiffs are entitled to a judgment declaring that

insofar as it relates to the distribution, handling and sale of imitation ice cream by plaintiffs, the word 'place' as used in Section 580 of the Agricultural Code is so vague and indefinite that it is repugnant to the due process clause of the Constitution of the United States and of the Constitution of the State of California.

"(6) In view of the above conclusions, the Court does not deem it necessary or appropriate to make conclusions of law respecting the other constitutional issues raised by the complaints."

Judgment was rendered enjoining defendants from enforcing the provisions of section 580 of the Agricultural Code. The court adjudged:

"It is further ordered, adjudged and decreed that insofar as it relates to the distribution, handling, sale, and offering for sale of imitation ice cream by plaintiffs the word 'place' as used in Section 580 of the Agricultural Code is so vague and indefinite that it is repugnant to the due process clause of the Constitution of the United States and of the Constitution of the State of California."

From the judgment defendants have appealed.

*Facts*: Plaintiffs are licensed wholesalers and retailers of imitation ice cream, a frozen dessert product which differs from ice cream only in that vegetable fats or oils are substituted for the butter fat which is found in ice cream. Imitation ice cream contains nothing harmful to human health and does contain substances which are valuable in human nutrition. Plaintiffs distribute and sell imitation ice cream only in package form and make no sales of their product in bulk.

Plaintiffs' sales and distribution of imitation ice cream were halted in June, 1953, by defendants' serving on them written notices to "cease immediately" the sale of imitation ice cream "in the same store or building" where ice cream was sold. This notice was purportedly based on section 580 of the Agricultural Code, set forth, *supra*. Plaintiffs immediately ceased the distribution and sale of imitation ice cream upon the service of the stop notices.

The containers in which plaintiffs' ice cream is sold clearly state the nature of the product. Banners with 6-inch red lettering stating "Imitation Ice Cream Sold Here" are displayed in stores which sell imitation ice cream. With occasional and unavoidable lapses, the retail stores concerned in these actions have sold ice cream and imitation ice cream

only from separate freezer cabinets. Plaintiffs have taken every reasonable precaution to prevent fraud or confusion or the possibility thereof in the sale of the product. There was no evidence that any customer had ever been confused or defrauded on the purchase of imitation ice cream.

■ *Question*: *Is section 580 of the Agricultural Code too vague, indefinite and uncertain to be constitutionally applied to plaintiffs' operations?*

*Yes.* Section 705 of the Agricultural Code makes a violation of section 580 a misdemeanor, punishable by fine or by imprisonment or both.

■ A statute providing for criminal penalties is invalid unless it informs the citizen with reasonable clarity and precision what acts are prohibited. ■ A statute "which either forbids or requires the doing of an act in terms so vague that men of common intelligence must necessarily guess at its meaning and differ as to its application violates the first essential of due process of law." (*Connally* v. *General Const. Co.*, 269 U.S. 385, 391 [46 S.Ct. 126, 70 L.Ed. 322, 328].)

The Connally case involved the interpretation of the word "locality," a word which is one of the many synonyms for "place." California courts have fully accepted and applied this rule. In *People* v. *Saad*, 105 Cal.App.2d Supp. 851 [234 P.2d 785], the court held invalid the statute using the words "touting" and "practices inimical to the public interest," saying at page 854 [5]:

"As stated in *Lanzetta* v. *New Jersey* (1938), 306 U.S. 451, 453 [59 S.Ct. 618, 83 L.Ed. 888, 891]: 'No one may be required at peril of life, liberty or property to speculate as to the meaning of penal statutes. All are entitled to be informed as to what the State commands or forbids. The applicable rule is stated in *Connally* v. *General Const. Co.*, 269 U.S. 385, 391 [46 S.Ct. 126, 70 L.Ed. 322, 328]: "That the terms of a penal statute creating a new offense must be sufficiently explicit to inform those who are subject to it what conduct on their part will render them liable to its penalties, is a well-recognized requirement, consonant alike with ordinary notions of fair play and the settled rules of law. And a statute which either forbids or requires the doing of an act in terms so vague that men of common intelligence must necessarily guess at its meaning and differ as to its application, violates the first essential of due process of law." ' "

In *Ex parte Schmolke*, 199 Cal. 42 [248 P. 244], speaking through Mr. Justice Shenk, the Supreme Court said at page

48 [7], that the statute which was found fatally uncertain was one which attempted to exempt from its operation vehicles operating within ". . . incorporated cities or towns or the usual transfer delivery zone adjacent thereto . . ." The court further stated, "We fail to be cognizant of any standard of measurement by which an operator could foretell the extent of such 'zone', and be certain that he was not transgressing the law when he proceeded to conduct his business on the public highways therein."

In *In re Peppers,* 189 Cal. 682 [209 P. 896], the Supreme Court held a statute which prohibited the shipment of oranges, "when frosted to the extent of endangering the reputation of the citrus industry if shipped," unconstitutional for the reason that the statute was too uncertain. In this case the court quoted with approval at page 686 from *United States* v. *Reese,* 92 U.S. 214 [23 L.Ed. 563], as follows: "If the legislature undertakes to define a new offense and provide for its punishment, it should express its will in language that need not deceive the common mind: Every man should be able to know with certainty when he is committing a crime . . . It would certainly be dangerous if the legislature could set a net large enough to catch all possible offenders and leave it to the court to step inside and see who could be rightfully detained and who should be set at large." (See also *In re Harder,* 9 Cal.App.2d 153 [49 P.2d 304]; *Barry* v. *Board of Directors of Imperial Irr. Dist.,* 7 Cal.App.2d 412 [46 P.2d 298]; *Perez* v. *Sharp,* 32 Cal.2d 711 [198 P.2d 17].)

Our Supreme Court has held invalid the argument that a statute must be upheld because of the presumption that an act of the Legislature is constitutional. In *In re Lockett,* 179 Cal. 581, 586 [178 P. 134], in passing upon such a contention the court said, "If the rule for which contention is made were to attach to all language, used in statutes, then would the court's duty to construe statutes stand helpless before an unpassable wall of presumption. When the legislature uses language in a statute we must interpret it as language. No peculiar sanctity attaches to it because it is language used in a legislative enactment. Ambiguity is not presumed to be intelligibility merely because it attaches to a statute, nor is hopeless obscurity illuminated by the fact that two houses have passed and a busy governor has signed a bill."

There is likewise no merit in the contention that in fact no criminal prosecution has been initiated against plaintiffs.

In *Federal Communications Com.* v. *American Broadcasting Co.*, 347 U.S. 284 [74 S.Ct. 593, 98 L.Ed. 699], the United States Supreme Court in dealing with a similar contention said at page 296, "It is true, as contended by the Commission, that these are not criminal cases, but it is a criminal statute that we must interpret. There cannot be one construction for the Federal Communications Commission and another for the Department of Justice. If we should give section 1304 the broad construction urged by the Commission, the same construction would likewise apply in criminal cases. We do not believe this construction can be sustained. Not only does it lack support in the decided cases, judicial and administrative, but also it would do violence to the well established principle that penal statutes are to be construed strictly."

Section 580 of the Agricultural Code is vague, uncertain and ambiguous because of the use of the term "place," a word which is not defined by statute, has no reasonable or definitely accepted meaning either in general usage or in the trades and industries here affected. It is not made reasonably certain by the context in which it is used.

In Webster's New International Dictionary, second edition, unabridged, (1939) volume II, p. 1877, there are listed 19 main definitions and some 50 subsidiary definitions, including "locality, spot, building, part of a building, or other spot set apart for a special purpose." It is readily apparent that the dictionary does not provide a guide for conduct under section 580 of the Agricultural Code, and that a person reading such definitions will emerge confused and uncertain if he attempts to determine with any accuracy the meaning of "place," relying on the dictionary.

Bouvier's Law Dictionary, Rawle's third revision, 1914, likewise does not give a definite or established meaning for the word in legal parlance. In volume 2, page 2595, it is said, "Any locality limited by boundaries however large or small. It may be used to designate a country, state, county, town, or a very small portion of a town. The extent of the locality designated by it must, generally, be determined by the connection in which it is used."

The attorney general of California has likewise indicated uncertainty as to the meaning of the word "place," because in an opinion interpreting a similar statute, section 28000 of the Health and Safety Code, which provided, "Horse meat shall not be sold in public markets where other meat and

meat food products are sold," he says in his opinion that under this statute horse meat may be sold in public markets "in *places* territorially or physically separated from those *places* at which meat or other meat products are sold (emphasis supplied)." On the basis of this opinion it could logically be contended that "place" refers to a particular spot within a store and that section 580 will not be violated if ice cream and imitation ice cream are sold in the same store in *places* territorially or physically separated from each other within the store.

The decisions of the appellate courts have likewise indicated that the term "place" has no definite and certain meaning. In *Standley* v. *Knapp*, 113 Cal.App. 91 [298 P. 109] (hearing denied by the Supreme Court), at page 98, the court stated: "In American and English Encyclopedia, second edition, at page 829, it is stated: 'The term place, in popular usage, is very indefinite. In legal parlance it is equally indefinite. The extent of the locality designated by it must generally be determined by the connection in which it is used.' "

Defendants attempt to show that "place" in section 580 of the Agricultural Code means "place of business" or "establishment" by citing other sections of the Agricultural Code which use these latter terms. An examination of these sections leads more reasonably to the conclusion that when the Legislature meant "place of business" or "establishment" it meant just exactly what it said and knew how to say it.

The net result of any attempt to determine the meaning of "place" is complete uncertainty and confusion. A grocer cannot know whether he can sell imitation ice cream in the same "locality" where ice cream is sold. He cannot guess with any accuracy whether or not it is permissible to sell imitation ice cream in the same building or part of a building where he sells ice cream. If, for example, a producer of ice cream has a concession in his store which sells ice cream there, he does not know whether a sale by him of imitation ice cream in a different part of his store will violate the law if his store has several separate departments, and ice cream is sold in one and imitation ice cream is sold in another. In the event he rents a "stall" in the Grand Central Market, extending between Broadway and Hill Streets in Los Angeles, he is uncertain whether he may sell imitation ice cream at his "stall" if any other seller handles ice cream at any other location in that market. If our seller has a store

on the fifth floor of a building, he does not know whether he will violate the law by selling imitation ice cream there when a tenant on the first floor is selling ice cream.

The inevitable result of the use of such a vague, uncertain, ambiguous term as "place" in section 580 is to force the citizen to guess at what the law proscribes. Section 580 leaves him no "measuring stick" as to what is within and what is outside the law. Clearly the "void for vagueness" principle is here applicable.

No person may be compelled, as the citizen is here compelled, to guess blindly as to what he may or may not do, and to run the substantial risk, if not the certainty, of being imprisoned or fined for guessing wrong. "It is the right of every person to know exactly what particular acts are prohibited." (*In re Harder,* 9 Cal.App.2d 153, 155 [49 P.2d 304].) Section 580 of the Agricultural Code is so vague that men of common intelligence must necessarily guess at its meaning and application; thus it violates the first essential of due process. (See *Connally* v. *General Const. Co., supra,* 391.) It is apparent from the record that the same confusion has beset defendants. In their opening brief, with reference to the meaning of the word "place," they say, ". . . where two distinct and separate businesses are carried on by different proprietors under one roof one may handle imitation ice cream; the other, ice cream; neither may handle both."

On the other hand, Mr. O. A. Chiggoile, Chief of the Bureau of Dairy Service of the Department of Agriculture, testified as follows:

"Q. Remember a conversation you had with Mr. Neal Wells in April or May, 1953, in which you expressed the opinion that in construing the word "place" that if you had a 14-story building and you sold ice cream on the first floor you could not sell imitation ice cream on the 14th floor, or words to that effect? A. Words to that effect, but I don't recall a 14-story building.

"Q. What were your words? A. "Place" in my opinion would be construed, would be that building as long as it was in the same ownership, regardless of how many stories.

"Q. Would it make any difference if it was under separate ownership? A. No.

"Q. It is your interpretation, then, and the interpretation of the Department of Agriculture, it is a place or building; is that correct? A. Yes.

"Q. Without respect to ownership? A. Yes."

Clearly the statement in the brief and the testimony of defendants are inconsistent.

■ There is likewise no merit in defendant's contention that the legislative history of section 580 makes its meaning and application clear. Even if this were so it would be impossible for a person to know, by reading the law, what it means. (*Mayhew* v. *Nelson,* 346 Ill. 381 [178 N.E. 921, 923].) A consideration of the legislative history of this statute fails to demonstrate that the statute means what defendants say it does, but in fact supports an interpretation under which the statute would not apply to plaintiffs' sales of imitation ice cream.

In its original form this statute (Stats. 1923, chap. 392), used instead of the single word "place," the words "factory, plant, hotel, restaurant, boarding house, inn, soda fountain or other places." The subsection heading for the statute reads "place of sale or manufacture." The section covers two different functions of sale and manufacture. These cases are not concerned with the effect of the statute on the manufacturing process; "factory and plant" can therefore be omitted from present consideration. The remaining specific words, "hotel, restaurant, boarding house and soda fountain" have a common analogous meaning, and were included by the Legislature because they were all businesses which served food for consumption on the premises. The statute may not on the strength of the specific businesses enumerated be expanded to encompass businesses not performing this function. The words "or other places" do not authorize such expansion because of the rule of *ejusdem generis* which has been defined as follows:

". . . where, in a statute, general words follow a designation of particular subjects or classes of persons, the meaning of the general words will ordinarily be presumed to be, and construed as restricted by the particular designation and as including only things or persons of the same kind, class, character or nature as those specifically enumerated. The general words are deemed to have been used not to the wide extent which they might bear if standing alone, but as related to words of more definite and particular meaning with which they are associated." (50 Am.Jur., (1944) Statutes, § 249, pp. 244, 246.)

Since the words concerning sale refer only to places where food is sold for consumption on the premises, the expression "or other places" merely refers to other places of this same

nature—for example, drug stores or tea shops. ■ The rule of *ejusdem generis* is applied "with stringency" in statutes providing criminal penalties. (*People* v. *Thomas,* 25 Cal.2d 880, 889 [156 P.2d 7] ; *People* v. *McKean,* 76 Cal. App. 114, 121 [243 P. 898] ; *United States* v. *Bevans,* 3 Wheat. (U.S.) 336, 390 [4 L.Ed. 404].)

■ There is no merit in the suggestion that section 580 of the Agricultural Code provided a valid standard for regulation. In the first place, plaintiffs and this court are not faced with any such regulation. The director has been requested to promulgate regulations interpreting the section, but has consistently refused to do so. In the second place, the promulgation of regulations interpreting section 580 would not be a mere filling out of a statutory framework but would be either a usurpation of the prerogative of the courts to determine the nature of the existing framework, or a usurpation of the power of the Legislature to establish such a framework. In any event the regulations are not above the law, but subject to it. "Whenever by the express or implied terms of any statute a state agency has authority to adopt regulations to implement, interpret, make specific or otherwise carry out the provisions of the statute, no regulation adopted is valid or effective unless consistent and not in conflict with the statute and reasonably necessary to effectuate the purpose of the statute." (Gov. Code, § 11374.)

Finally, there has been no long-continued interpretation of section 580 of the Agricultural Code as contended by defendants. Defendant Ghiggoile testified that no interpretation of that word or section was made by the department of agriculture from the time the present statute was enacted until sometime in 1952, when an oral or written interpretation was given to several unnamed persons, and that not even an oral interpretation was given by the attorney general until 1953 ; that on June 11, 1953, at hearings held by the department there was no representative of the department who expressed the opinion that "place" meant "store or building." There was no application of the section prior to its application to plaintiffs in 1953.

The trial court's finding that the statute in question was so indefinite, vague and uncertain as to be unconstitutional as applied to plaintiffs, is in accordance with the statement of the United States Supreme Court in *Connally* v. *General Const. Co.,* 269 U.S. 385, 391 [46 S.Ct. 126, 70 L.Ed. 322], ". . . a statute which either forbids or requires the doing

of an act in terms so vague that men of common intelligence must necessarily guess at its meaning and differ as to its application violates the first essential of due process of law.''

In view of our conclusions it is unnecessary to consider the other grounds of unconstitutionality of the statute urged by plaintiffs.

Affirmed.

Moore, P. J., and Fox, J., concurred.