[Civ. No. 20592. First Dist., Div. Two. Nov. 16, 1962.]

CHARLES PAUL, as Director of Agriculture, Plaintiff and Respondent, v. HERMAN H. WADLER et al., Defendants and Appellants.

William H. Penaat for Defendants and Appellants.

Stanley Mosk, Attorney General, and Dent N. Hand, Jr., Deputy Attorney General, for Plaintiff and Respondent.

KAUFMAN, P. J.—In this appeal from an order denying the appellants' motion for dissolution and modification of a temporary restraining order and granting the respondent, Director of Agriculture of the State of California, a preliminary injunction restraining the appellants from selling fiuid milk below the minimum established price, it is argued that: (1) the basic statute (Agr. Code, § 4212) on which the temporary restraining order and preliminary injunction were based is unconstitutional; (2) the preliminary injunction was improperly issued, as section 4361 of the Agricultural Code is also unconstitutional; (3) the temporary restraining order was issued in violation of section 527 of the Code of Civil Procedure; and (4) the terms of the temporary restraining order and the preliminary injunction were more prohibitive than those of the statute. We have concluded that there is no merit in any of these contentions.

The facts giving rise to this controversy are not in dispute. On December 1, 1961, respondent Paul, the Director of Agriculture of the State of California, filed his complaint alleging that the appellants, Herman H. Wadler, also known as Herman H. Wadler, doing business as Wadler's Cash & Carry, and Wadler's Cash & Carry, Inc., were engaged in the business of

selling fluid milk and fluid cream to consumers in "retail stores," as defined by section 4218 of the Agricultural Code in the Santa Clara Marketing Area; that pursuant to his authority under section 4351 of the Agricultural Code, he had issued Order No. 17 duly designating and prescribing minimum wholesale and minimum retail prices for fluid milk sold in the Santa Clara Marketing Area as follows: for fluid milk containing less than 4.2 per cent milk fat, at retail to consumers: 24 cents for a quart container, from April 1 to August 31; 25 cents from September 1 to March 31; 47 cents for one-half gallon from April 1 until August 31; 49 cents from September 1 through March 31.

The complaint further alleged that on or about November 29, 1961, appellants were selling fluid milk at the price of 39 cents per half gallon by various schemes and devices, particularly by selling fluid milk in glass containers at retail to consumers at the established minimum price without charging a deposit on the glass container and at the same time in connection with the sale or at later times in connection with other such sales of fluid milk, offering to pay the consumer a sum of money for the glass containers, so that the net amount paid by the consumer for the fluid milk was less than the applicable retail store minimum price prescribed in accordance with the above quoted schedule.

The complaint alleged that this practice was a violation of section 4361 of the Agricultural Code, and referred to similar actions against the appellants in San Mateo and Alameda Counties. Appellants admitted their status as retail stores subject to regulation by the respondent, as well as the course of conduct charged, but maintained that their actions were legal and the statutes unconstitutional. Respondent prayed for preliminary and permanent injunctions and applied ex parte for a temporary restraining order. The order to show cause and temporary restraining order were issued and served on the appellants the same day, December 1. Appellants filed their motion to dissolve or modify the temporary restraining order and the matter was heard on December 7, 1961, and the appellants' motions denied on December 13, and the preliminary injunction issued. This appeal ensued.

Appellants first argue that this proceeding to enforce compliance with minimum retail prices for fluid milk prescribed by the respondent pursuant to section 4351 of the Agricultural Code is void, because section 4212 of the Agricultural Code which defines "fluid milk" is vague, indefinite and un-

certain, contains no standards to guide the public under the law, is an unreasonable restriction on a lawful business, does not have a uniform operation, and is not concerned with public health, safety, welfare or morals. Appellants contend that the section constitutes an unlawful use of police power violating the due process and equal protection clauses of the Fourteenth Amendment to the United States Constitution and sections 1, 11 and 13 of article I of the California Constitution.

The purpose of the Milk Stabilization Act (Agr. Code, ch. 17, §§ 4200-4420) is to eliminate unfair, unjust, destructive and demoralizing trade practices in the producing, marketing, sale, processing or distribution of milk, which tend to undermine regulations and standards of the content and purity (Agr. Code, §§ 4200-4201). The director is authorized to prescribe marketing areas (Agr. Code, § 4202) and to determine prices which are necessary to the varying factors in the cost of production and distribution, provided that the cost to distributors within any marketing area shall be uniform with all other distributors purchasing fluid milk and fluid cream of similar grade or quality under like terms and conditions (Agr. Code, § 4204). The act is to bring about a reasonable amount of stability and prosperity in the marketing of milk, but nothing in the statute shall be construed as permitting or authorizing the development of conditions or monopoly in the production or distribution of milk. The terms and conditions governing the production and distribution of milk shall be such as will insure in the several localities and markets of the state, under the varying conditions of production and distribution, an adequate and continuous supply of pure, fresh, wholesome fluid milk and fluid cream to consumers thereof at fair and reasonable prices (Agr. Code, § 4205; see also *Challenge Cream etc. Assn.* v. *Parker,* 23 Cal. 2d 137 [142 P.2d 737, 149 A.L.R. 1203]). The act is designed to regulate what the producer shall receive not what the consumer shall pay (*United Milk Producers* v. *Cecil,* 47 Cal.App.2d 758 [118 P.2d 830]). Chapter 17 is supplemented by chapter 16 (§§ 4100-4195) of the Agricultural Code, relating. to the marketing of milk and other dairy products.

The power of the state to regulate the milk industry and the general authority of the director of agriculture to fix minimum prices under the act has been considered by our Supreme Court and upheld, in *Jersey Maid Milk Products Co.* v. *Brock,* 13 Cal.2d 620 [91 P.2d 577] and *Ray* v. *Parker,* 15

Cal.2d 275 [101 P.2d 665], as a valid exercise of the police power, on the authority of *Nebbia* v. *New York*, 291 U.S. 502 [54 S.Ct. 505, 78 L.Ed. 940, 89 A.L.R. 1469] (also 155 A.L.R. 1383).

In *Jersey Maid Milk Products Co.* v. *Brock, supra,* the court held that the division of the milk industry into two classifications, one governing "market" or "fluid milk" and the other applying to manufacturing milk, was founded upon a natural distinction between two branches of the industry and was not discriminatory as long as applicable to all persons in the business of marketing fluid milk. Appellants, however, contend that the Jersey Maid case, *supra,* merely upheld the constitutionality of the predecessor of section 4212, Agricultural Code, which defined fluid milk as any and all milk produced in conformity with quality standards prescribed by the Agricultural Code for market milk etc. (former § 735.3 as amended in 1937).

At present, section 4212 of the Agricultural Code which defines fluid milk for purposes of the act, reads as follows: " 'Fluid milk' means any and all whole or concentrated milk that is produced in conformity with applicable health regulations for market milk *of the place where such milk is consumed."* [Emphasis added.] Appellants contend that under this version of the statute, the applicable health regulations cannot be determined until *the place* where the milk is consumed is ascertained and that, therefore, there is no easily ascertainable standard for identifying "fluid milk" and all legislative enactments relating to the regulation of fluid milk are void, particularly section 4351 of the Agricultural Code which provides methods for establishing minimum prices, and section 4361 of the Agricultural Code which prohibits the sale of fluid milk at less than the established minimum prices. Appellants rely on *Market Basket* v. *Jacobsen,* 134 Cal.App.2d 73 [285 P.2d 344], wherein section 580[1] of the Agricultural Code was held unconstitutional because the term "place" as used therein had no reasonable or definitely accepted meaning.

We cannot agree. There is no lack of a definite and ascertainable body of law to arrive at the meaning of "fluid milk" as used in sections 4212, 4361 and other relevant portions of

---

[1] "Imitation ice cream or imitation ice milk shall not be manufactured, processed, frozen, handled, distributed or sold in any place where ice cream or ice milk is manufactured, processed, frozen, handled, distributed or sold." (Added Stats. 1947, ch. 939, p. 2191, § 9.)

the Agricultural Code. As indicated above, the milk industry is divided into two classifications, one for market or fluid milk, the other for manufacturing milk. "Market milk" is defined by section 451 of the Agricultural Code as: ". . . milk which is supplied to the consumer in the natural fluid state, or prepared for human consumption without being converted into any other form or product and shall conform to the standards provided therefor in Chapter 3 of this division. Except as otherwise specifically provided 'market milk' includes 'market cream.' '' The definition set forth in section 4212 has not been substantially changed since 1951, except for the 1961 amendment to section 4351 which provided that the term "fluid milk" includes "low fat milk." (Stats. 1961, ch. 2126, § 7.) "Milk" and the various classes of fluid milk which are the basis of the price differentials are defined in sections 460 to 512 of the Agricultural Code. The language of section 4212 objected to by the appellants referred to the then existing local regulations for market milk. Prior to 1937, the state occupied the whole field of milk inspection and distribution (*Pacific Coast Dairy* v. *Police Court,* 214 Cal. 668 [8 P.2d 140, 80 A.L.R. 1217]). After the enactment of the original Milk Control Act in 1937, the Agricultural Code authorized municipalities and counties to establish regulations providing for higher standards for market milk than those provided by state law, so long as such regulations were not in conflict with state law (*Meridian, Ltd.* v. *Sippy,* 54 Cal.App.2d 214, 219 [128 P.2d 884]).

However, in 1959, an amendment to section 490 of the Agricultural Code (Stats. 1959, ch. 2102, p. 4872) severely restricted the power of local authorities to establish regulations providing for higher standards for market milk than those prescribed by state law. Since that date, a municipality or county can only provide for compulsory pasteurization of market milk or reasonable higher standards for milk fat and solids not fat. These, however, relate only to the distribution of fluid milk, not the production thereof. Thus, there are no longer any local regulations concerning the *production of fluid milk,* and there are no "applicable health regulations for market milk of the place where such milk is consumed" except the state health statutes and regulations, found in sections 450 to 457 of the Agricultural Code, and title 3 of the California Administrative Code. Therefore, milk produced in conformity with the applicable state statutes and regulations is "fluid milk," notwithstanding the implication of sections 500 and

4212 that local regulations must be consulted. As these sections predate the 1959 amendment of section 490, conflicts must be resolved in favor of the later enactment. The producer's compliance with the applicable state regulations is an ascertainable fact. Thus, there is no merit in appellants' argument that section 4212 is vague, indefinite and uncertain, and all enactments relating to "fluid milk" are void.

Section 4361 of the Agricultural Code, so far as relevant, provides: ". . . no retail store . . . shall . . . sell to any consumer, any fluid milk or fluid cream, or either of them, at less than the prices as established by the director under the provisions of this article [Agr. Code, div. 6]. The use or attempted use of any method, device or transaction whereby . . . any retail store . . . sells or offers or agrees to sell to any consumer, fluid milk or fluid cream, or either, at a price less than that established by the director under the provisions of this article, is prohibited whether such method, device or transaction applies directly to fluid milk, fluid cream or either or applies to or is used in connection with the sale or handling of any commodity, product or article. Prohibited methods, devices or transactions shall include, but not be limited to, any one or more of the following: . . . payments, allowances or credits made or given for, or in connection with, the return of containers or other property, *unless such payment, allowance or credit is a repayment of a deposit or charge, in excess of the price established by the director under the provisions of this article*, . . . paid by a . . . consumer, for the return of such containers or other property." [Emphasis added.]

Appellants next contend that this section is unconstitutional as an unreasonable restriction on their lawful business of buying back empty containers. We do not agree. In *Challenge Cream etc. Assn.* v. *Parker, supra,* our Supreme Court struck down an order under the Milk Control Act establishing a higher minimum price for milk delivered in paper or fiber containers than that for the same quantity and quality of milk delivered in glass bottles. The court concluded that even though the delivery of milk in the fiber containers might involve a greater expense than the delivery made in glass bottles and the director was to consider methods of distribution as one of the cost factors in setting prices, there was an absence of legislative intent to include the type of container in which a given quantity or quality of milk was delivered as a cost factor in determining minimum prices. The court held that the price for the same quantity of milk must

be the same, regardless of the type of container used. Thus, the minimum price of milk includes the cost of the container.

Appellants further argue that although milk must be sold in sanitary containers filled at the plant (Agr. Code, § 463), the container may be a standard glass bottle and there is no legal requirement that retail stores use specially marked bottles or exact a deposit on bottles. ▮▮▮ Appellants here argue that section 4361 of the Agricultural Code, in its present form, unconstitutionally forces them to charge a deposit on the glass bottles while no such requirement is made of a home delivery distributor. However, the price differential between retail stores and home delivery distributors has long been recognized as a relevant factor in setting the minimum price (*Challenge Cream etc. Assn.* v. *Parker, supra*; see cases collected in 149 A.L.R. 1203), like the differential between retail stores and milk processing plants (*Misasi* v. *Jacobsen,* 55 Cal. 2d 303 [10 Cal.Rptr. 850, 359 P.2d 282]).

However, section 4361 does not prevent the appellants from buying containers from their customers. The section merely prevents them from doing this in connection with the sale of milk so that the price paid by the customer is less than the established minimum price. The statute specifically provides that the payment, allowance or credit for the return of the container must be in excess of the minimum price. Appellants cannot use the subterfuge of buying back empty containers to avoid the established minimum price provided by law.

Our conclusion is supported by the recent decision in *Milk Control Com.* v. *McAllister Farm Dairy, Inc.* (1956) 384 Pa. 459 [121 A.2d 144]. In that case, under a Milk Control Act, similar to ours, the Supreme Court of Pennsylvania held a retailer in contempt of a preliminary injunction against selling milk below minimum prices. The retailer sold milk in glass bottles for which he charged a deposit of 5 cents, but advised his customers that another retailer only a short distance away across the state line would redeem the bottles for 20 cents or 25 cents, pursuant to a previous understanding.

We can only conclude that the trial court did not abuse its discretion in issuing the preliminary injunction. ▮▮▮ It is well settled that the issuance of a preliminary injunction is discretionary and will not be disturbed on appeal except for an abuse of discretion (*Flavio* v. *McKenzie,* 177 Cal.App.2d 274 [2 Cal.Rptr. 79]).

We turn now to the appellants' arguments relating to the respondent's failure to conform with the statutory require-

ments for the issuance of the temporary restraining order. Respondent in this matter, proceeded under the authority of section 4256 of the Agricultural Code, which provides that procedural matters shall be governed by chapter 3 of title 7 of part 2 of the Code of Civil Procedure, sections 525 et seq.

Section 527 of the Code of Civil Procedure, so far as relevant, provides: ''An injunction may be granted at any time before judgment upon a verified complaint, or upon affidavits if the complaint in the one case, or the affidavits, in the other, show satisfactorily that sufficient grounds exist therefor. A copy of the complaint or of the affidavits, upon which the injunction was granted, must, if not previously served, be served therewith.

''No preliminary injunction shall be granted without notice to the opposite party; nor shall any temporary restraining order be granted without notice to the opposite party, *unless it shall appear from facts shown by affidavit or by the verified complaint that great or irreparable injury would result to the applicant before the matter can be heard on notice.* In case a temporary restraining order shall be granted without notice, in the contingency above specified, the matter shall be made returnable on an order requiring cause to be shown why the injunction should not be granted, on the earliest day that the business of the court will admit of, but not later than ten days from the date of such order.'' (Emphasis supplied.)

Appellants contend that no allegation of irreparable damage appears in the complaint, that the complaint was not verified, and that no supporting affidavit was filed as required, as a prerequisite to the issuance of a temporary restraining order without notice. However, section 446 of the Code of Civil Procedure relieves an officer of the state acting in his official capacity from the necessity of verifying a pleading (*People* v. *Birch Securities Co.,* 86 Cal.App.2d 703, 707 [196 P.2d 143]), and section 531 of the Code of Civil Procedure provides that the general and ordinary business of a corporation may be enjoined without notice where the state is a party to the action. Thus, we can find no merit in the appellants' latter points. However, the first point relating to the absence of an allegation of irreparable damage requires more extensive discussion.

Section 527 of the Code of Civil Procedure requires an allegation of great or irreparable injury in order to secure a temporary restraining order without notice. The section distinguishes between ''preliminary injunctions'' and ''temporary

restraining orders," and authorizes a temporary restraining order on a *verified complaint only*, and prohibits the issuance of both temporary restraining orders and preliminary injunctions without notice, except as otherwise provided in case of temporary restraining orders. ▮ Although it has been held that all of the conditions of section 527 must be met (*Northcutt* v. *Superior Court*, 66 Cal.App. 350, 355 [226 P. 25]), a preliminary injunction to restrain the commission of an unlawful act may properly issue without notice to the actor (*Hobbs* v. *Amador & Sacramento Canal*, 66 Cal. 161 [4 P. 1147]).

In the federal courts, it has been held that irreparable injury need not be shown in cases involving a preliminary injunction, where the injunction is authorized by statute, and the statutory conditions are satisfied (*Henderson* v. *Burd*, 133 F.2d 515 [146 A.L.R. 714]; *Securities & Exchange Com.* v. *Torr*, 87 F.2d 446; *United States* v. *Adler's Creamery, Inc.*, 110 F.2d 482, cert. den. 311 U.S. 657 [61 S.Ct. 12, 85 L.Ed. 421]; *American Fruit Growers* v. *United States*, 105 F.2d 722). The theory is that when a legislative body has authorized the injunctive remedy for the violation of a statute, it has determined as a matter of law that irreparable injury attends the violation of the statute. Thus, where agencies of the federal government have been given the right to apply for injunctive relief in the public interest, the courts do not require a showing of irreparable injury (*Walling* v. *Builders' Veneer & Woodworking Co.*, 45 F.Supp. 808, 809). ▮ The courts of this state have adopted similar reasoning, that is, where an injunction is authorized by statute, a violation thereof is good and sufficient cause for its issuance (*Porter* v. *Fiske*, 74 Cal.App.2d 332 at p. 338 [171 P.2d 971]; see also *Wind* v. *Herbert*, 186 Cal.App.2d 276 [8 Cal.Rptr. 817]). It would appear that the same rule should apply to the less drastic relief afforded by a temporary restraining order which accomplishes the same purpose, that is, to maintain the status quo, but for a more limited time. ▮ We hold, therefore, that the allegation of the violation of section 4361 of the Agricultural Code satisfied the irreparable injury requirement of section 527 of the Code of Civil Procedure for the granting of the temporary restraining order, without notice.

▮ The final contention on appeal is that the terms of the temporary restraining order and the preliminary injunction based thereon must be modified to conform to the statute. Appellants contend that the order is more restrictive than the

statute and is drafted along the lines of the pre-1959 version of section 4361 of the Agricultural Code[2] (Stats. 1959, ch. 783, p. 2776, § 1).

The terms of the temporary restraining order and the preliminary injunction restrain payment only in a situation where "the net amount paid by consumers is less than the applicable minimum price for fluid milk at the retail store level, prescribed by the director of agriculture."

Appellants contend that the present section 4361 of the Agricultural Code merely prohibits them from giving their customers credit or cash for the glass containers unless such payment or credit is a repayment of the deposit while the language of the temporary restraining order prevents them from paying their consumers any sum of money for containers. Appellants contend that many other types of commodities such as orange juice are sold in similar containers and that similar containers are used by other retailers. Appellants contend that the order must be modified to prohibit them merely from payments, allowances or credits for the *return* of containers, unless such payment, allowance or credit is a repayment of a deposit or charge in excess of the established price. We cannot agree. There is nothing to prevent the appellants from giving their customers a payment, allowance or credit for the containers when the commodity purchased is anything other than milk and when the effect of the transaction is not to lower the price paid for milk by the consumer. We conclude, therefore, that the trial court properly denied the appellants' motion to modify.

Order granting preliminary injunction affirmed. Order denying motion for dissolution and modification of temporary restraining order affirmed.

Shoemaker, J., and Agee, J., concurred.

---

[2]The prior version of the statute prohibited gifts to consumers in connection with the return of containers.