[Civ. No. 339.   Fifth Dist.   Oct. 23, 1964.]

CHARLES PAUL, as Director of Agriculture, Plaintiff and Appellant, v. WADLER'S CASH & CARRY, INC., et al., Defendants and Respondents.

Stanley Mosk and Thomas C. Lynch, Attorneys General, and Donald H. Maffly, Deputy Attorney General, for Plaintiff and Appellant.

Herman H. Wadler, in pro. per., Allen & Perry, John D. George and Claude O. Allen for Defendants and Respondents.

CONLEY, P. J.—This is an appeal from a judgment of nonsuit. The Director of Agriculture attempted to enforce the Milk Stabilization Law, division 6, chapter 17, of the Agricultural Code (Agr. Code, §§ 4256 and 4410, subd. (c)), and Stanislaus County Order No. 57 by filing a complaint alleging five causes of action against Wadler's Cash & Carry, Inc. and Herman H. Wadler; the latter's liability was based upon the allegation that the corporation was his *alter ego.* In the first four causes of action, it was alleged that during the months of November and December 1962, the defendants on four separate occasions sold a half gallon of fluid milk containing less than 4.2 per cent milk fat to E. L. Ranck for $0.51 and later paid to him $0.10 when he returned each empty half-gallon container to the particular store of defendant where the purchase had been made, thus, violating the minimum price of $0.46 for each half gallon. In each of these causes of action, it was claimed that the defendant had violated section 4361 of the Agricultural Code and hence had become liable to plaintiff for a civil penalty of $500 as provided in section 4410, subdivision (c), of the same code.

The complaint correctly set forth that Stanislaus County Order No. 57 relative to the minimum wholesale and retail prices for fluid milk was effective April 1, 1962, within an area designated as the Stanislaus County marketing area, and that the order was in force within the county at the times the sales were made. A copy of the order including its schedule 1 is attached to the complaint; it shows that the minimum retail store carry-out price of a half gallon of fluid milk containing less than 4.2 per cent milk fat was $0.46.

Plaintiff prayed for a total judgment of $2,000 as civil penalties for the four violations alleged in the first four causes of action and in the fifth cause of action asked for a permanent injunction restraining defendants from violating the minimum price schedule in the future.

After the plaintiff rested, the defendants moved for a nonsuit which was granted. ▉ In *McCall* v. *Otis Elevator Co.*, 219 Cal.App.2d 22, 25 [33 Cal.Rptr. 44], this court clearly stated: "On an appeal from a judgment of nonsuit the usual rules establishing the technique for the examination of the record and the decision of the case are vitally changed. In the normal appeal in a completely tried case, every intendment is in favor of the judgment, and the inquiry made by the appellate court is normally restricted to the question whether there is any substantial evidence to support the verdict or the findings of the court below. But when the appeal is from a judgment of nonsuit, the appellate court inquires, rather, whether there is substantial evidence in the record which, if believed by the finder of fact, would justify a judgment in favor of the plaintiff, and if the answer to this inquiry is affirmative, the judgment of nonsuit must be reversed. ▉ The rationale of this change of rule is obvious. It is the intention of the law that the jury, or in the absence of a jury, the court, as finder of fact, is entitled to pass upon the whole record, except in those relatively rare cases where, as a matter of law, the plaintiff has not made out a case and would not be entitled to a judgment in his favor." (See also *Chavez* v. *County of Merced,* 229 Cal.App.2d 387, 389 [40 Cal.Rptr. 334]; *Gordon H. Ball, Inc.* v. *Parreira,* 214 Cal.App.2d 697, 702-703 [29 Cal.Rptr. 679]; *Reynolds* v. *Willson,* 51 Cal.2d 94, 99 [331 P.2d 48]; *Seneris* v. *Haas,* 45 Cal.2d 811, 821 [291 P.2d 915, 53 A.L.R.2d 124]; *Palmquist* v. *Mercer,* 43 Cal.2d 92, 95 [272 P.2d 26].)

▉ Is the evidence such that the finder of fact could have found legitimately for the plaintiff? If so, the judgment of nonsuit is erroneous. Eugene Ranck, a senior investigator for the Bureau of Milk Stabilization, Department of Agriculture, testified that he had been employed by the bureau for two years; it was his duty to call on retail grocery stores selling fluid milk to determine whether there was compliance with lawful minimum prices; obviously, an unenforced law is little better than a nullity. Mr. Ranck had often visited all five of Wadler's Cash & Carry, Inc. retail stores in the Stanislaus area; on November 30, 1962, under the direction of

his superior, Ranck went to defendant's retail store at 1600 Tully Road in Modesto to purchase milk; he entered the store, removed a half gallon glass container of fluid, which appeared to be milk, from the refrigerator, placed the bottle on the counter near the cash register, paid the clerk $0.51 and took the bottle of milk out of the store in a sack. The bottle was a plain one-half gallon unmarked container with a 48-millimeter neck opening; the paper outer cover and the inner disk cap covering the neck of the bottle were labelled, "Wadler's Cash & Carry, Modesto, California. Vitamin D. Milk, Grade A, Pasteurized, Homogenized." Leaving the store, Ranck placed the bottle of milk under refrigeration in his car and took it to Sacramento to the Bureau of Dairy Service laboratory. In a few days, he picked up the bottle from the laboratory together with an analysis of the contents; he drank some of the fluid from the bottle to enable him to testify that it tasted like milk; he emptied the remainder of the contents and washed the container; on December 7, 1962, Ranck returned to the store from which he had purchased it, and placed the empty bottle on the counter; the clerk handed him $0.10 from the cash register. Three other occurrences were testified to by Mr. Ranck which paralleled the above happenings.

Ranck also testified that he met with a Mr. Vierra, the president of the defendant corporation, on November 7, 1962, at the Vierra ranch near Turlock; they discussed the practice of selling milk employed by the defendant corporation and the giving of a refund for the return of an empty bottle so that the net price paid for the milk was actually less than the lawful minimum price; this practice was referred to as the "bottle gimmick"; Ranck testified that he told Vierra that the "bottle gimmick" had been held to be illegal by the courts in Stanislaus County, but Vierra stoutly maintained that Wadler had told him the "bottle gimmick" was legal. Ranck demanded that the defendant corporation stop using this practice in selling fluid milk. After the above conversation and the four sales mentioned in plaintiff's complaint, Ranck made some 14 purchases of homogenized milk in half gallon containers in the stores of defendant; the price and the manner of paying $0.10 for the empty bottle were the same.

Among the items of evidence were the findings of fact and conclusions of law in a Santa Clara Superior Court case dated December 3, 1962; the same parties were involved. The record shows that on December 11, 1962, a judgment, now

final, was entered on these findings which, among other things, stated that "The defendant corporation, Wadler's Cash & Carry, Inc. is the *alter ego* of the defendant Herman H. Wadler, and is a mask behind which said defendant Herman H. Wadler individually conducts his enterprise." The trial judge in this case correctly ruled that Wadler was collaterally estopped from denying that the corporation was his *alter ego* on the date that the above findings were filed.

Ranck and another plaintiff's witness, John J. Vidra, also a senior investigator with the Bureau of Milk Stabilization, testified that defendant sells fruit punch, buttermilk, skimmed milk, imitation milk and other liquid products in this same type of bottle, and that once the outer cover of the bottle's neck and inner cap are removed, the bottles used for these various purposes are indistinguishable. Ranck testified that on October 5, 1962, at defendant's store at 1122 McHenry Street in Modesto, he bought a half-gallon container of imitation milk for $0.39 and remarked to the clerk that he thought the advertised price was $0.29, at which time the clerk told him that $0.10 of the $0.39 charge was a bottle deposit.

The witness further testified that the defendant corporation was the only distributor in the particular marketing area using half-gallon glass containers with a neck opening of 48 millimeters which were unmarked. The witness, Vidra, testified that when he took two empty milk bottles having different shapes and neck openings of 56 millimeters, which were used by other distributors, to defendant's store on McHenry Street in Modesto, he wanted to use these bottles to pay for the bottle deposit which the clerk had requested of him when he purchased a half gallon of buttermilk and a half gallon of chocolate drink, but the clerk refused to accept the bottles saying they were not Wadler bottles; Vidra took the bottles to another store owned by defendant and the clerk gave him $0.10 for one bottle but refused the other one saying it would not fit in the milk bottle case.

Totally considered, the plain meaning of the testimony received by the court was that Mr. Ranck paid $0.41 for each half gallon of milk and not $0.51 as respondent contends, because he initially paid $0.51 for the milk and the glass container and subsequently received a $0.10 refund or rebate upon returning the bottle after its contents had been emptied. Thus, by the use of the "gimmick" the actual net price paid for each half gallon of milk was $0.41. This "gimmick" had been foreseen by the California Legislature, which specifically

prohibited it by the following language in an amendment to section 4361 of the Agricultural Code:

". . . [N]o retail store . . . shall . . . sell to any consumer, any fluid milk . . . at less than the prices as established by the director under the provisions of this article. The use or attempted use of any method, device or transaction whereby . . . any retail store, . . . sells or offers or agrees to sell to any consumer, fluid milk . . . at a price less than that established by the director under the provisions of this article, is prohibited. . . . Prohibited methods, devices or transactions shall include, but not be limited to, any one or more of the following: discounts, rebates, free services, advertising allowances, leases of refrigeration or other equipment, gifts, or payments, allowances or credits made or given for, or in connection with, the return of containers or other property, unless such payment, allowance or credit is a repayment of a deposit or charge, in excess of the price established by the director under the provisions of this article, paid by a wholesale customer, or by a consumer, for the return of such containers or other property."

The trial court seemed impressed by the argument that the sale of the milk and the resale of the bottle to the corporation were two separate and allegedly disconnected events. This is contrary to the legislative action referred to above and makes a mockery of common sense. It can make no difference whether, as tirelessly contended by the respondents, the same type of bottle was used by the Wadler sales outlets for fruit juices, imitation milk and other fluids as well as for milk. If such a bottle was to be used by the Wadler stores, it was absolutely essential that the deposit figure with respect to the bottles carrying milk should have been in addition to the minimum price required for the sale of milk in that territory. In other words, if there was a general practice of charging a $0.10 deposit for a bottle by the Wadler outlets it was necessary that they add such a figure to the minimum price of the bottled milk before selling it. Instead of doing that, they so arranged things that the ultimate effect of the sale of the milk and the rebate on the bottle would be a sale of the milk for $0.05 under the legal minimum.

In *Paul* v. *Wadler*, 209 Cal.App.2d 615, 618 [26 Cal.Rptr. 341], a case involving the same parties, it was alleged in the complaint that defendants were selling fluid milk at the price of $0.39 per half gallon through the use of various schemes and devices, particularly by selling fluid milk in glass containers at retail to consumers at the established minimum

price without charging a deposit on the glass container, and at the same time or at later times offering to pay the purchaser a sum of money for the glass containers so that the net amount paid for the fluid milk was less than the applicable retail store minimum price prescribed by law.

In that case, on page 623 the court stated: "However, section 4361 does not prevent the appellants from buying containers from their customers. The section merely prevents them from doing this in connection with the sale of milk so that the price paid by the customer is less than the established minimum price. The statute specifically provides that the payment, allowance or credit for the return of the container must be in excess of the minimum price. Appellants cannot use the subterfuge of buying back empty containers to avoid the established minimum price provided by law."

In the former *Wadler* case opinion is cited *Milk Control Commission* v. *McAllister Farm Dairy, Inc.*, 384 Pa. 459 [121 A.2d 144, 146-147], wherein the court stated "By the cleverly conceived plan of rebates through redemption the actions of the appellant were a plain and simple circumvention of the Commission regulations and of the court's order that milk be not sold below the minimum prices. To have found otherwise than the court did here would have been deliberately to close its eyes to the actual facts."

As the nonsuit was unjustified and the case will have to be retried, this court should properly consider a point referred to in the briefs which again will necessarily arise. Appellant contends that the trial court erred in ruling that section 445 of the Agricultural Code prohibited plaintiff from introducing evidence as to the analysis of the milk purchased by Mr. Ranck because he did not leave a sample of the milk with defendants.

Section 445 of the Agricultural Code reads as follows: "No prosecution based on a sample of milk, cream or product thereof, shall be had unless a duplicate of said sample is left with the accused; but no samples taken in connection with the establishment of proof of fraudulent manipulation of the tests for the basis of payment for milk, or cream, need be given to the accused."

Appellant correctly urges that the ruling did not prevent plaintiff from presenting a prima facie case because there is an inference that the bottles which Mr. Ranck purchased contained what their labels said and because the store clerk produced the bottle when milk was requested. The evidence

should be received, however, as confirmatory of what the bottle contained; the present action is based on alleged sales of fluid milk at less than the prescribed minimum price, and section 445 of the Agricultural Code obviously applies only to prosecutions based on the chemical contents of the sample of the milk (Agr. Code, div. 4), and not to actions under chapter 17 of division 6 of the same code.

Respondent's statement that his costs are so much less than those of ordinary retail stores that a lower minimum price is warranted might well be proper for the Legislature to consider if it were considering a change in the law, but it is irrelevant to a consideration of the propriety of a judgment of nonsuit in the pending litigation.

The judgment is reversed.

Stone, J., concurred.

Brown (R. M.), J., deeming himself disqualified, did not participate.

A petition for a rehearing was denied November 18, 1964. Brown (R. M.), J., did not participate therein. Respondents' petition for a hearing by the Supreme Court was denied January 20, 1965. Mosk, J., did not participate therein.