[Civ. No. 35556. First Dist., Div. Two. Apr. 28, 1975.]

CALIFORNIA STATE UNIVERSITY, HAYWARD et al.,
Plaintiffs and Respondents, v.
NATIONAL COLLEGIATE ATHLETIC ASSOCIATION,
Defendant and Appellant.

534

## COUNSEL

Sullivan, Jones & Archer, Richard J. Archer, Kristina M. Hanson, Thomas J. Mellon, Jr., Swanson, Midgley, Eager, Gangwere & Thurlo and George H. Gangwere for Defendant and Appellant.

Evelle J. Younger, Attorney General, Elizabeth Palmer, Assistant Attorney General, and Daniel Johnson, Jr., Deputy Attorney General, for Plaintiffs and Respondents.

## OPINION

**BRAY, J.***—Defendant National·Collegiate Athletic Association appeals from the order of the Alameda County Superior Court granting a preliminary injunction.

### ISSUES PRESENTED

1) The trial court had jurisdiction to intervene in the dispute between California State University, Hayward (hereinafter CSUH) and the National Collegiate Athletic Association (hereinafter NCAA).

2) There was no abuse of discretion in the issuance of the preliminary injunction.

3) Verification of the complaint was not required.

---

*Retired Presiding Justice of the Court of Appeal sitting under assignment by the Chairman of the Judicial Council.

## Record

California State University at Hayward and Ellis McCune, in his official capacity as President of CSUH, filed a complaint in the Alameda County Superior Court against the NCAA.[1] The complaint sought injunctive relief enjoining the NCAA from enforcing its decision[2] that the entire intercollegiate athletic program at CSUH was indefinitely ineligible for post-season play.

The court issued a temporary restraining order against enforcement of the NCAA decision, and an order to show cause why a preliminary injunction should not be issued. Prior to the hearing on the order to show cause the NCAA filed a demurrer to the complaint. Following the hearing and an examination of the complaint, affidavits in support of and opposing the preliminary injunction, and the memoranda of points and authorities, the court granted a preliminary injunction enjoining the NCAA from enforcing its order declaring CSUH indefinitely ineligible from participating in NCAA championship athletic events, pending trial of the matter.

## Facts

CSUH is a campus of the California State Colleges and University System. The NCAA is an unincorporated association organized to supervise and coordinate intercollegiate athletic programs and events among public and private colleges and universities. It is the largest voluntary association of intercollegiate athletics in the country.

An "active" member of the NCAA is a four-year college or university. CSUH became an active member in 1962. An "allied" member is an athletic conference or association composed of active members. The Far Western Conference (hereinafter FWC) is an unincorporated California association organized to sponsor and coordinate intercollegiate athletics on a regional basis. The FWC is an allied member of the NCAA. CSUH is also a member of the FWC.

---

[1]The complaint was subsequently amended to include the trustees of the state colleges and universities and Glenn S. Dumke, chancellor, as plaintiffs.

[2]Under the decision, CSUH was ineligible indefinitely to enter teams or athletes in national collegiate championship competition, and in all other post-season meets and tournaments, and was not eligible to participate in any national television series or programs administered or controlled by the NCAA.

Upon becoming an active member of the NCAA, CSUH agreed to comply with all the requirements of the NCAA constitution and bylaws. Upon becoming an allied member the FWC agreed to abide by and enforce the NCAA constitution and bylaws. And, under article 3, section 2, of the NCAA constitution, the FWC was charged with the responsibility and control of intercollegiate athletics in the conference.

In 1966 the NCAA adopted bylaw 4-6(b)(1), also known as the "1.6 rule" as follows: "(b) A member institution shall not be eligible to enter a team or individual competitors in an NCAA-sponsored meet, unless the institution in the conduct of all its intercollegiate athletic programs: [¶] (1) Limits its scholarship or grant-in-aid awards (for which the recipient's athletic ability is considered in any degree), and eligibility for participation in athletics or in organized athletic practice sessions during the first year in residence to student-athletes who have a predicted minimum grade point average of at least 1.600 (based on a maximum of 4.000) as determined by the Association's national prediction tables or Association-approved conference or institutional tables, . . ." The rule caused confusion among NCAA members, and between 1966 and 1973 the NCAA issued several official interpretations in order to clarify the rule. In 1973 the rule was abolished but it was in effect during the period under consideration here. The FWC was responsible for interpreting the NCAA constitution and bylaws for conference members. It interpreted the 1.6 rule as follows in its constitution, article VI, section 3(e): ". . . Entering freshman students who upon graduation from high school predict less than 1.600 grade point average at a member institution according to NCAA procedures, shall not be eligible to compete in intercollegiate athletics until after they have earned at least a 2.0 (c) average for at least 10 units for any term."

On or about October 30, 1969, Arthur J. Bergstrom, acting in his official capacity as assistant executive director of the NCAA, sent a letter to the FWC explaining the difference between in-season conference and post-season championship eligibility requirements. This distinction would permit a conference to apply its own eligibility rules for in-season conference activity as long as athletes who were not in strict compliance with NCAA eligibility requirements were not eligible for post-conference championship competition. CSUH knew of this letter and relied on the interpretation of the NCAA requirements stated therein as approval of the FWC eligibility requirements set forth in article VI, section 3(e), of the FWC constitution.

In the fall of 1969 one Ronald McFadden was admitted to CSUH under a special admittance program, the Equal Opportunity Program. In the fall of 1970 one Melvin Yearby was admitted under the same program. At the time of admission neither predicted a 1.6 grade point average according to NCAA procedures, and neither participated in intercollegiate athletics his first term at CSUH. At the end of their respective first terms, each had earned better than a 2.0 grade point average for more than 10 units of college work. Each was thereafter permitted to participate in intercollegiate athletics but was not considered by CSUH to be eligible for post-season competition in the freshman year. Article VI, section 3(e) of the FWC constitution was in effect at the time of the admission of McFadden and Yearby to CSUH.

On or about November 27, 1972, the NCAA informed CSUH that McFadden and Yearby had been ineligible to compete in their freshman years because they had failed to comply with the 1.6 rule. The NCAA ordered CSUH to declare the two ineligible to participate in any intercollegiate athletics for a one-year period, 1972-1973. At that time McFadden was a senior and Yearby was a junior. CSUH did not declare the two ineligible and appealed the decision to the NCAA. The NCAA declared the entire intercollegiate program at CSUH to be indefinitely ineligible for post-season play. The CSUH appeal to the NCAA to reverse its decision was refused.

1) *Jurisdiction.*

Defendant NCAA contends that the trial court erred in failing to follow the doctrine of judicial abstention from interference in the affairs of a private voluntary association. However, courts will intervene in the internal affairs of associations where the action by the association is in violation of its own bylaws or constitution. ■ "It is true that courts will not interfere with the disciplining or expelling of members of such associations where the action is taken in good faith and in accordance with its adopted laws and rules. But *if the decision of the tribunal is contrary to its laws or rules, or it is not authorized by the by-laws of the association, a court may review the ruling of the board and direct the reinstatement of the member. (Sweetman v. Barrows,* 263 Mass. 349 [161 N. E. 272, 62 A. L. R. 311]; *Most Worshipful United Grand Lodge, etc.,* v. *Lee,* 128 Md. 42 [96 Atl. 872, Ann. Cas. 1918E, 1174]; 25 R. C. L. 57, sec. 14.)" (Italics added.) *(Smetherham v. Laundry Workers' Union* (1941) 44 Cal.App.2d 131, 135-136 [111 P.2d 948].)

And in *Smith* v. *Kern County Medical Assn.* (1942) 19 Cal.2d 263 [120 P.2d 874], concerning expulsion from an association, a situation which is analogous to suspension, the court stated: "In any proper case involving the expulsion of a member from a voluntary unincorporated association, *the only function which the courts may perform is to determine whether the association has acted within its powers in good faith, in accordance with its laws and the law of the land.* (*Levy* v. *Magnolia Lodge, I. O. O. F.,* 110. Cal. 297 [42 Pac. 887]; *Smetherham* v. *Laundry Workers' Union,* 44 Cal.App.(2d) 131 [111 Pac. (2d) 948]; 7 C.J., pp. 64, 68.)" (Italics added.) (*Smith* v. *Kern County Medical Assn., supra,* at p. 265.) This same principle is articulated in *Bernstein* v. *Alameda etc. Med. Assn.* (1956) 139 Cal.App.2d 241, 253 [293 P.2d 862], and *Miller* v. *Internat. Union etc. Engineers* (1953) 118 Cal.App.2d 66, 68 [257 P.2d 85]. (See also 6 Am.Jur.2d, Associations and Clubs, § 37, pp. 466-468, and 7 Cal.Jur.3d; Associations and Clubs, § 32, p. 161.)

█ In the instant case plaintiffs' complaint alleges that the NCAA decision, that the entire intercollegiate program at CSUH is indefinitely ineligible for post-season competition, is contrary to the NCAA constitution and bylaws, and that the decision is void as against public policy because it would force CSUH to violate constitutional rights of its students guaranteed by the Fourteenth Amendment. The trial court has not yet finally adjudicated these claims but plaintiffs are entitled to have the matter determined.

Defendant NCAA asserts that as a matter of law no interest of any member of the NCAA is sufficiently substantial to justify judicial intervention because the interest affected by the sanction in question is the school's potential participation in NCAA championship events, an interest which is a mere expectancy as it is contingent upon performance during the season. The NCAA claims that California courts have only intervened when a vital interest was affected, such as where a member was expelled from a union, where a professional or trade organization's actions threatened disastrous economic consequences to a member, where substantial property interests were threatened by expulsion from an association, or where someone was totally excluded from becoming a member of a group.

As to the latter point, the court took a position contrary to appellant's in *Bernstein* v. *Alameda etc. Med. Assn., supra,* 139 Cal.App.2d 241 at page 253, when it found that the California Supreme Court had implied:

". . . that in relation to this subject there is no fundamental distinction between a medical association, a labor union and a fraternal or beneficial association. In each type of organization the relationship between the members and the group is determined by contract, the terms of which find expression in the constitution and by-laws." Likewise there can be no fundamental distinction between an athletic association and the above associations where, as here, the claim is that the association failed to abide by its own rules or the laws of the land.

As to the claim that CSUH's interest is not sufficiently substantial to justify judicial intervention due to a mere expectancy of participation in championship events, it has already been discussed that a violation by an association of its own bylaws and constitution or of the laws of the land justifies judicial intervention. Further, that CSUH had, and has, more than a mere expectancy that some of its athletes would earn the opportunity to participate in NCAA championship events but for the suspension is evidenced by the fact that at the time of both the hearing on the temporary restraining order and the hearing on the preliminary injunction, there were upcoming NCAA championship events in which CSUH students, without the imposed suspension, were eligible to compete. Additionally, the decision of the NCAA necessarily affects more than just the possibility of being precluded from championship events. The sanction of indefinite probation affects the reputation of CSUH and its entire athletic program, and thereby also affects CSUH's ability to recruit athletes. Judicial notice may be taken that state schools such as CSUH are deeply involved in fielding and promoting athletic teams with concurrent expenditures of time, energy and resources. The school provides and pays for the coaches, supplies and equipment. It finances, equips, trains and fields the teams. And, its funds pay the NCAA membership dues. (See *Parish* v. *National Collegiate Athletic Association* (W.D.La. 1973) 361 F.Supp. 1214.) The contention that CSUH has no substantial interest to justify judicial intervention lacks merit.

In a case concerning students suspended from the University of Minnesota basketball team by that school, the court commented on whether those students had a substantial interest: "Likewise, the Big Ten has not disputed that the plaintiffs' interest—an opportunity to participate in intercollegiate athletic competition at one of its member institutions—is substantial. Indeed, it would be hard to so dispute in light of analogous cases which indicate the direction in which this area of the

law is evolving. Kelley v. Metropolitan County Board of Education of Nashville, 293 F. Supp. 485 (M.D.Tenn. 1968); Curtis v. National Collegiate Athletic Association, (N.D. Cal. No. C-71-2088 ACW, February 1, 1972). [¶] While 'big time' college athletics may not be a 'total part of the educational process,' as are athletics in high school, *Kelley, supra,* nonetheless the opportunity to participate in intercollegiate athletics is of substantial economic value to many students. In these days when juniors in college are able to suspend their formal educational training in exchange for multi-million dollar contracts to turn professional, this Court takes judicial notice of the fact that, to many, the chance to display their athletic prowess in college stadiums and arenas throughout the country is worth more in economic terms than the chance to get a college education. [¶] . . . It has also been held that high school students' interests in participation in athletics are so substantial that they cannot be impaired without proceedings which comply with minimum standards of due process. *Kelley, supra.* Surely, the interests of college athletes in participating in activities which have the potential to bring them great economic rewards are no less substantial." (*Behagen* v. *Intercollegiate Conference of Faculty Rep.* (D. Minn. 1972) 346 F.Supp. 602, 604.) While that case differs from the instant case in that it concerned students directly, and their suspension from all competition, the language offers guidance here.

The NCAA also claims that plaintiffs do not contend that the procedural process followed by the NCAA in imposing sanctions on CSUH was not full and fair, and asserts: "While insisting that voluntary non-profit associations follow their own procedures in disciplining their members, courts have refused to disturb the association's decision when there was no procedural unfairness and the proceedings conformed to the requirements established by the group."

As already discussed the courts will intervene where the action by the association is in violation of its own bylaws and constitution. That this rule applies to substantive as well as procedural questions is supported by cases which appellant itself cites. In *Smetherham* v. *Laundry Workers' Union, supra,* 44 Cal.App.2d 131, the court reviewed a bylaw which the petitioner had allegedly violated and found that there was no basis in that bylaw for petitioner's expulsion from the union. In *Smith* v. *Kern County Medical Assn., supra,* 19 Cal.2d 263, the court reviewed whether the association had followed the procedure provided by the rules of the society in expelling the plaintiff, but also reviewed whether there had

been sufficient showing to support a finding that the charge against plaintiff was one which constituted a violation of the rules of the society.

NCAA also asserts that judicial intervention in this type of case is undesirable and raises a number of policy arguments to that effect. Because it is clear that courts will intervene if an association violates its own rules or the laws of the land, these arguments have no weight.

Plaintiffs have raised sufficient questions as to whether the NCAA has violated its own rules or the laws of the land by its action to justify intervention by the trial court to determine these questions.

2) *The trial court did not abuse its discretion in issuing the preliminary injunction.*

██ The NCAA contends that the trial court abused its discretion in issuing the preliminary injunction because plaintiffs failed to show irreparable injury and there is no likelihood that plaintiffs will succeed in any of their claims.

██ " 'The granting or denial of a preliminary injunction does not amount to an adjudication of the ultimate rights in controversy. It merely determines that the court, balancing the respective equities of the parties, concludes that, pending a trial on the merits, the defendant should or that he should not be restrained from exercising the right claimed by him.' (*Miller & Lux* v. *Madera Canal etc. Co.* (1909) 155 Cal. 59, 62-63 [99 P. 502] [citations].) ██ The general purpose of such an injunction is the preservation of the status quo until a final determination of the merits of the action. (*Stewart* v. *Superior Court* (1893) 100 Cal. 543, 545 [35 P. 156, 563] [citation].) Thus, the court examines all of the material before it in order to consider 'whether a greater injury will result to the defendant from granting the injunction than to the plaintiff from refusing it; . . .' (*Santa Cruz Fair Bldg. Assn.* v. *Grant* (1894) 104 Cal. 306, 308 [37 P. 1034] [citations].) In making that determination the court will consider the probability of the plaintiff's ultimately prevailing in the case and, it has been said, will deny a preliminary injunction unless there is a reasonable probability that plaintiff will be successful in the assertion of his rights. [Citations.] As was said in *Family Record Plan, Inc.* v. *Mitchell* (1959) 172 Cal.App.2d 235, 242 [342 P.2d 10], 'In the last analysis the trial court must determine which party is the more likely to be injured by the exercise of its discretion [citation] and it must then be exercised in favor

of that party [citation].' " (*Continental Baking Co. v. Katz* (1968) 68 Cal.2d 512, 528 [67 Cal.Rptr. 761, 439 P.2d 889].)

■ The NCAA produced no affidavits or other evidence at the hearing on the preliminary injunction to show that it would suffer injury were the preliminary injunction granted. CSUH on the other hand in its complaint alleged that unless the preliminary injunction issued its athletes would be precluded from participating in all post-season events, that CSUH would suffer a loss of revenue thereby, and that the recruitment of potential athletes would be impaired. This was supported by the affidavit of the athletic director of CSUH to the effect that six CSUH athletes would be precluded from participation in a swimming and diving championship competition under the NCAA sanction. At the time of the hearing the date of the swimming and diving championship had passed, but the clear implication was that other such events would occur during the pendency of the suit which would cause the same kind of harm. Additionally, at the hearing the trial judge said, "I think without any evidence being presented, I can take as common knowledge or take judicial notice that there is a great deal of potential harm to, at least the institution who would be affected if their institution is wrongfully suspended or ousted permanently."

As to whether plaintiffs have a reasonable probability of ultimately succeeding in the suit, they have raised issues of sufficient seriousness for the trial court to decide.

■ "Discretion is abused in the legal sense 'whenever it may be fairly said that in its exercise the court in a given case exceeded the bounds of reason or contravened the uncontradicted evidence.' (*Estate of Parker* (1921) 186 Cal. 668, 670 [200 P. 619]; see *Bailey v. Taaffe* (1866) 29 Cal. 422, 424; *Sharon v. Sharon* (1888) 75 Cal. 1, 48 [16 P. 345]; *State Farm etc. Ins. Co. v. Superior Court* (1956) 47 Cal.2d 428, 432 [304 P.2d 13].)" (*Continental Baking Co. v. Katz, supra,* 68 Cal.2d 512, at p. 527.)

■ The NCAA has failed to show an abuse of discretion in this instance.

Both the NCAA and CSUH also raise in great detail arguments as to the merits of their respective positions in the question of whether a permanent injunction should issue. These questions will be determined by the trial court and are not suitably addressed to this court on this appeal from the granting of a preliminary injunction.

■ "Generally, a preliminary injunctive order does not reach the merits of the permanent injunctive relief sought in the complaint. The court, at this stage, balances the equities of the parties and determines whether the defendants should be restrained from exercising the right claimed by them pending a trial on the merits. The general purpose is to preserve the status quo until the merits of the action are determined. The court considers who will bear the greater injury should the preliminary injunction be granted and whether a reasonable probability exists the plaintiff will prevail. (*Continental Baking Co.* v. *Katz,* 68 Cal.2d 512, 528 [67 Cal.Rptr. 761, 439 P.2d 889].)" (*State Bd. of Barber Examiners* v. *Star* (1970) 8 Cal.App.3d 736, 738 [87 Cal.Rptr. 450].)

3) *Verification of complaint not required.*

■ Lastly, NCAA contends that plaintiffs failed to establish sufficient grounds for any preliminary relief because the complaint was not verified, and therefore under Code of Civil Procedure section 446 the court could not consider the allegations in the complaint in issuing the preliminary injunction. NCAA further contends that the declarations filed by plaintiffs, when subjected to the same evidentiary rules as oral testimony which they must be, were alone not a sufficient basis for preliminary relief.

NCAA's contentions are not well founded. It is true that Code of Civil Procedure section 527 reads in pertinent part: " 'An injunction may be granted at any time before judgment upon a verified complaint, or upon affidavits if the complaint in the one case, or the affidavits, in the other, show satisfactorily that sufficient grounds exist therefor. . . .' [¶] However, section 446 of the Code of Civil Procedure relieves an officer of the state acting in his official capacity from the necessity of verifying a pleading . . . ." (*Paul* v. *Wadler* (1962) 209 Cal.App.2d 615, 624 [26 Cal.Rptr. 341].) In *Paul* v. *Wadler, supra,* the court upheld the issuance of a temporary restraining order and preliminary injunction although the state had not verified the complaint or filed affidavits. When he signed the declaration accompanying the application for preliminary injunction Ellis McCune was acting in his official capacity as President of CSUH as plaintiff, and the complaint herein was signed by a deputy attorney general, a state officer. Therefore under Code of Civil Procedure section 446 the complaint need not be verified.

As earlier discussed, the complaint and affidavits are sufficient to support the issuance of the preliminary injunction. This is without resort to any potentially inadmissible evidence; therefore, the NCAA's contention as to the declarations need not be considered further.[3]

Judgment affirmed.

Taylor, P. J., and Kane, J., concurred.

A petition for a rehearing was denied May 28, 1975, and appellant's petition for a hearing by the Supreme Court was denied June 26, 1975.

---

[3]It is noted that subsequent to the filing of the briefs herein the NCAA submitted a copy of an opinion of the United States District Court, Northern District of California, *Saulny* v. *NCAA,* No. C-74-2489 SC in support of its position. That opinion is not relevant to the issues discussed herein.