Filed 8/26/13  Housing Authority of the City of Glendale v. Mithaiwala CA2/5

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| HOUSING AUTHORITY OF THE CITY OF GLENDALE et al., <br><br> Plaintiffs and Respondents, <br><br> v. <br><br> TINA MITHAIWALA et al., <br><br> Defendants and Appellants. | B234687 <br><br> (Los Angeles County Super. Ct. No. BC460044 and BC460066) |

APPEAL from an order of the Superior Court of the County of Los Angeles, Ann I. Jones, Judge.  Affirmed.

Law Offices of David J. Altman, David J. Altman for Defendants and Appellants Jannki Mithaiwala, Advanced Development & Investment, Inc., Pacific Housing Diversified, Inc., California City Lights, LLC, and Sadi, LLC.

Law Offices of Michelle J. Correll, Michelle J. Correll for Defendant and Appellant Salim Karimi.

Baker Marquart, Mark Lee Smith for Defendant and Appellant Ajit Mithaiwala.

Burke, Williams & Sorensen, Charles E. Slyngstad for Plaintiffs and Respondents City of Glendale and Housing Authority of the City of Glendale.

Carmen A. Trutanich and Mike Feuer, City Attorneys, Brian I. Cheng, Deputy City Attorney for Plaintiff and Respondent City of Los Angeles.

Levy, Small & Lallas, Leo D. Plotkin, Mark D. Hurwitz for Plaintiffs and Respondents Glendale City Lights, Metropolitan City Lights and Vassar City Lights.

## INTRODUCTION

Defendants and appellants[1] (defendants) appeal from the trial court's order appointing a receiver in two related cases brought by plaintiffs and respondents City of Los Angeles (Los Angeles) and City of Glendale and its Housing Authority (Glendale).[2] According to defendants, there was no admissible evidence to support the order appointing the receiver; the receiver appointed by the trial court was not qualified to serve in that capacity due to conflicts of interest; and the order appointing the receiver was overbroad because it authorized the dissolution of their assets without a trial and included individual assets not subject to the receivership.

We hold that because substantial evidence supported the trial court's order appointing a receiver, the trial court did not abuse its discretion in entering that order; the trial court did not abuse its discretion by appointing as receiver in the Cities' actions the same receiver who had previously acted as receiver in the marital dissolution action between Karimi and Jannki; and the trial court did not abuse its discretion by authorizing the receiver to marshall and liquidate receivership assets or by including the assets of the individual defendants in the receivership estate. We therefore affirm the order appointing the receiver in its entirety.

---

[1]     The defendants and appellants are Jannki Mithaiwala (Jannki), her husband Salim Karimi (Karimi), her father Ajit Mithaiwala (Ajit), Advanced Development & Investment, Inc. (Advanced Development), Pacific Housing Diversified, Inc. (Pacific Housing), California City Lights, LLC, and Sadi, LLC. Karimi and Ajit appealed only from the order entered in the action brought by Los Angeles.

[2]     Los Angeles and Glendale are sometimes collectively referred to as the Cities.

## FACTUAL AND PROCEDURAL BACKGROUND

### A.        Low Income Housing Projects

At the time Karimi filed the dissolution action discussed below, he and his wife Jannki were shareholders in Advanced Development and Pacific Housing.  Advanced Development was a low income housing developer and the administrative general partner of 57 limited partnerships that owned and operated 55 low income housing projects in California.  Pacific Housing was the general building contractor for these housing projects.

### B.        Dissolution Action and Original Receivership

In January 2010, Karimi filed a marital dissolution action entitled *In re the Marriage of Salim Karimi and Jannki Mithaiwala,* Los Angeles County Superior Court Case No. BD578503 (dissolution action). In February 2010, at the request of Karimi and without objection from Jannki, the trial court in the dissolution action appointed David Pasternak as receiver "to take immediate and sole possession, custody, and control of the parties' shares of stock in [Advanced Development and Pacific Housing (receivership corporations)], and to maintain and conserve the Property pending further order of this Court."  According to an interim report filed by the receiver in the dissolution action, shortly after he was appointed, the receiver appointed himself as a director of the two receivership corporations. The other directors were Karimi and Jannki's father, Ajit.  In March 2010, the receiver was advised that Karimi and Jannki were being audited by the IRS for failure to report income and also learned that the two receivership corporations might also have significant tax liabilities.  At the receiver's suggestion, the board retained the law firm of Buchalter Nemer (Buchalter) to investigate and advise the board about those tax matters, and Buchalter, in turn, retained the accounting firm of Crowe Horwath to assist in its investigation.

3

In or around April 2010, Karimi and Jannki each accused the other of wrongfully transferring millions of dollars from the receivership corporations prior to the receiver's appointment. In August 2010, the receiver terminated the receivership corporations' chief financial officer and hired an independent accountant and business manager to serve as the on-site controller for the corporations. Shortly thereafter, the receiver retained counsel to advise the receiver about certain criminal law issues that had arisen in connection with the business affairs of the two receivership corporations.

In September 2010, the receiver, through his hired professionals, presented to the court in the dissolution action a power point preliminary report summarizing the results of his investigation. In the report, the receiver advised the court of certain "indicia of fraud" that he had discovered. According to the report, the receiver had discovered fraudulent invoices and draw requests, examples of which were attached; a lack of documentations and internal controls; company funds being treated as personal assets, including unpaid personal loans to Karimi and Jannki from the receivership corporations totaling at least $36 million and at least $25 million of the receivership corporations' assets being transferred to India; and interference with his investigation. The report also outlined possible criminal activities, including fraud on lenders and municipalities, failure to report income, and falsification of books and records to conceal fraud. The report recommended, inter alia, that the court in the dissolution action execute a proposed order expanding the receiver's authority.

During the hearing on the report, the receiver informed the court in the dissolution action that he had terminated Ajit as acting president of Advanced Development and had removed Jannki and Karimi from the board of directors, making the receiver the sole director. At the conclusion of the hearing, the court in the dissolution action authorized the receiver "to contact any law enforcement and/or prosecution agencies" concerning the possible criminal activities detailed in the receiver's report. The court also granted the proposed supplemental receivership order that expanded the receivership to include "[a]ll property and assets held by, for the benefit of, or improperly transferred from [Advanced Development and Pacific Housing] . . . ." In addition, the supplemental order extended

4

the receivership to include "[a]ll property and assets held by, for the benefit of [Karim and Jannki], including, but not limited to all stock [held in certain Indian corporations]." The receiver was empowered to "operate and manage the Receivership Property and Receivership Entities" and to "employ agents, employees, clerks, accountants, and property managers to administer the receivership estate, purchase materials, supplies and services, . . . do all things and incur the risks and obligations ordinarily incurred by owners, managers and operators of similar businesses and enterprises . . . ."

In late September 2010, Buchalter terminated its representation of Advanced Development and was retained to act as the receiver's attorneys. During October 2010, "[t]he Receiver and his counsel continued communicating with the Los Angeles County District Attorney's Office and the United States Attorney's Office pursuant to [the dissolution court's] direction." Also during that time period, the receiver retained a company to inspect the 55 low income properties of which Advanced Development was the administrative general partner. That inspection company found "extensive deferred maintenance at the vast majority of those properties, as well as some health and safety concerns." According to the receiver, "all dangerous conditions [were] being promptly addressed, . . . [and] the Receiver continued to formulate a plan to address the extensive deferred maintenance at the properties." The receiver also scheduled a trip to India in November with two of his forensic accountants "to pursue the recovery of the estimated $25-$30 million of the Companies' funds that had been transferred through the shareholders and others to India Companies and otherwise to India, and perhaps elsewhere." In addition, the receiver continued to pay for the living expenses and attorney fees of Karimi and Jannki.

In November 2010, the receiver traveled to India with his two forensic accountants to pursue recovery of the funds transferred there by Karimi and Jannki. In December 2010, the receiver reported that he and his accountants were continuing to reconstruct the receivership corporations' financial records "because of [those corporations'] gross failure to previously maintain any semblance of adequate financial books and records with regard to the operation of the [corporations] or the many limited partnerships and

5

LLCs which [Advanced Development] formed and administered." As of the end of January 2011, the receiver reported that the receivership estate held $47,847,555.98.

In March 2011, Karimi and Jannki entered into an "Assignment Agreement" pursuant to which they agreed, inter alia, to a division of their respective interests in Advanced Development and Pacific Housing and to dismiss the marital dissolution action. On March 8, 2011, the court in the dissolution action held a hearing to consider Karimi's and Jannki's joint request to dismiss that action. Although Karimi and Jannki requested both the dismissal of the dissolution proceeding and the termination of the receivership, the court in the dissolution action continued the matter until April 26, 2011, to consider further the effect of the dismissal on the receivership and to allow interested parties to file separate lawsuits to preserve their interest in the receivership estate's assets.

## C. The Cities' Respective Actions

On April 21, 2011, Glendale filed a complaint against Karimi, Ajit, Advanced Development, Pacific Housing, Jannki, and others.[3] The complaint alleged causes of action for violation of the False Claims Act (Gov. Code, § 12650 et seq.); appointment of a receiver; intentional and constructive fraud; unjust enrichment; civil conspiracy to defraud; violation of RICO; unfair business practices (Bus. & Prof. Code, § 17200 et seq.); breach of the implied covenant of good faith and fair dealing; constructive trust; violation of the False Claims Act (Gov. Code, § 12652, subd. (a)(8)); an accounting; negligence; and accounting malpractice. The allegations were based on, inter alia, information discovered by the receiver that suggested the defendants had defrauded Glendale in connection with $34 million it had provided in loans for the development of four low income housing projects in Glendale. According to the complaint, "many of the draw requests submitted by [Pacific Housing] to [Glendale] for the Glendale Housing Developments, as well as to other cities for other recent housing projects, were significantly overstated and inaccurate, resulting in payments being made to [Pacific

---

**3**     Among the other defendants named in the complaint were defendants and respondents Vassar City Lights, Metropolitan City Lights, and Glendale City Lights.

Housing] by the construction lenders in amounts substantially higher than the costs actually incurred. Upon further investigation, the Receiver and his authorized representatives confirmed, among other things, that, in a number of specific instances, subcontractor invoices, contracts and lien releases, as presented to third parties, did not match original documents, and that copies of documents submitted as backup to draw requests did not match the corresponding documents in the Companies' records. Further investigation confirmed that these fraudulent activities were not isolated in scope and were not limited to any one project or Partnership, but, to the contrary, were consistent with a pervasive pattern of conduct by [Advanced Development] and [Pacific Housing] and the other Defendants in the conduct of the affordable housing developments, including the Glendale Housing Developments."

On the same day Glendale filed its complaint, Los Angeles filed its own complaint against, inter alia, Advanced Development, Ajit Development & Investment, Inc., Pacific Housing, Karimi, Jannki, and Ajit. That complaint asserted causes of action for violation of the False Claims Act (Gov. Code, § 12650 et seq.); violation of the Unfair Competition Law (Bus. & Prof. Code, § 17200 et seq.); fraud, constructive fraud; deceit; violation of RICO; conspiracy; negligence; breach of contract; breach of the implied covenant of good faith and fair dealing; injunctive relief and accounting; and constructive trust. The allegations in the Los Angeles complaint were also based on certain information discovered by the receiver that suggested that the named defendants had defrauded Los Angeles in connection with loans it had provided for the development of 15 low income housing projects in Los Angeles. According to the Los Angeles complaint, the named defendants "engaged in an ongoing scheme and collusion of defrauding . . . Los Angeles . . . during, but not limited to, their pre-development, pre-construction and construction of affordable housing projects in [Los Angeles] using funds and loans from the [Los Angeles] Affordable Housing Trust Fund which included state and federal funds."

7

**D. Los Angeles's Ex Parte Application for Transfer of Receivership**

On April 29, 2011, Los Angeles filed an ex parte application for transfer of receivership, receiver, and all related property from the dissolution action to the action filed by Los Angeles. In support of its application, Los Angeles submitted the declaration of Deputy City Attorney Timothy Chung describing how certain of the low income housing projects were funded. Los Angeles also submitted the declaration of Deputy City Attorney Deborah Breithaupt describing the 15 low income housing projects developed by Advanced Development and Pacific Housing in Los Angeles, which developments were funded, in part, by Los Angeles. Ms. Breithaupt explained specific examples of falsified invoices submitted to Los Angeles during the course of the development of certain of the low income housing projects in Los Angeles. She also attached what she said were true and correct copies of certain documentary exhibits, including a copy of the power point preliminary report filed by the receiver in the dissolution action as described above.

The self-described "independent board of directors" of Advanced Development filed an opposition to the ex parte application. According to the independent board, there was no legal authority permitting the transfer of a receivership from one case to another; the facts presented did not support appointment of a receiver; and, even if a receiver was appropriate, the receiver in the dissolution action could not act as the receiver in the Cities' actions because of conflicts of interest and other misconduct committed while the receiver was acting in that capacity in the dissolution action. The attorney declaration in support of the independent board's opposition attached as exhibits biographies of the two purported outside, independent board members of Advanced Development who had purportedly been engaged to act as restructuring and turnaround experts for that corporation.

Karimi also opposed the ex parte application to transfer the receivership. He argued that there was no legal or factual basis for transferring the receivership and provided certain documentary evidence that purported to show that the receiver in the dissolution action had conflicts of interest that prevented him from acting as the receiver

8

in the Cities' actions, including three civil complaints filed by Palms Residential Care Facility, Inc., an entity for which the receiver had acted as litigation counsel in the past.

The trial court heard Los Angeles's ex parte application for appointment of a receiver on April 29, 2011. After extensive oral argument, the trial court issued an interim order that provided, inter alia, "Los Angeles has presented evidence of its direct and immediate legal and equitable interests in the property and assets that are the subject of the Receivership in [the dissolution action], which interests would be irreparably and substantially prejudiced by any judgment, disposition and/or return of the Receivership property and assets to the parties in [the dissolution action] (Salim Karimi and Jannki Mithaiwala) and their respective companies Advanced Development . . . and Pacific Housing . . . [¶] . . . David J. Pasternak (the 'Receiver') shall continue working as Receiver of all aforesaid Receivership property and assets under the same terms and conditions as set forth herein and pending further order of this Court on or before May 19, 2011, and shall continue to administer the Receivership Estate consistent with this order. [¶] . . . [¶] The Receiver shall continue to have sole and exclusive possession, custody and control of all property and assets held by, for the benefit of, or improperly transferred from [Advanced Development, Pacific Housing] Salim Karimi, Jannki Mithaiwala, and Ajit Mithaiwala, Tina Mithaiwala, (hereinafter 'Receivership Entities, Receivership Property, Receivership Estate') in whatever form or name held and wherever located, and to operate, maintain and conserve the Receivership Estate pending further order of the Court." The trial court continued the matter for further hearing on May 19, 2011, set a briefing schedule, and granted Glendale's application to join in Los Angeles's request for appointment of a receiver.

## E.     Hearing on Motion for Appointment of Receiver

In connection with the May 19, 2011, further hearing on the receivership issue, the receiver filed a proposed plan for the administration of the receivership. The receiver's plan proposed, inter alia, that Advanced Development withdraw as the administrative managing partner of each of the 55 low income housing projects' limited partnerships.

9

The plan also proposed that the receiver would commence the process of marshalling and liquidating the assets of Advanced Development and Pacific Housing.

In response to the receiver's proposed plan and the Cities' request for appointment of a receiver, the purported "incoming management" of Advanced Development filed an opposition supported by four declarations and certain documentary exhibits thereto. Among other documents, the incoming management, itself, submitted the second interim report of the receiver which advised the court in the dissolution action, inter alia, that Karimi and Jannki and "each other had wrongfully transferred millions of dollars from [Advanced Development and Pacific Housing] prior to the Receiver's appointment for their own benefit (and for the benefit of Ajit Mithaiwala and his wife Tina Mithaiwala)." The incoming management submitted to the trial court a copy of the receiver's power point preliminary report from the dissolution action that included examples of fraudulent invoices and draw requests and notarized statements from Advanced Development employee Faisal Saleem stating, in effect, that the former management of Advanced Development had forced him to "change/forge/and manufacture invoices against [his] will." The incoming management also filed a separate response to the receiver's proposed plan in which Ajit joined. Ajit's joinder was accompanied by a request for judicial notice of the receiver's first supplemental inventory listing the individual and corporate assets the receiver had obtained since the court in the dissolution action issued its September 2010 supplemental order appointing him as receiver.

Karimi also filed objections to the receiver's proposed plan, which objections were supported by a declaration from his counsel attaching certain documents, including civil complaints filed by PNC Capital Investments in connection with certain Advanced Development properties, presumably to show that the receiver had a conflict of interest.

Los Angeles, Glendale, and the receiver each filed replies to the oppositions to the request for appointment of a receiver. The receiver's reply was accompanied by a lengthy declaration from the receiver in which he addressed the alleged conflicts of interest as well as other issues, and a request for judicial notice, which request attached, inter alia, the receiver's special report on his trip to India and a copy of a "Waterfall"

10

report[4] from the receiver's accountant for three low income housing projects that was submitted to the court in the dissolution action.

Karimi filed a surreply in opposition to the request for appointment of a receiver. He also filed written evidentiary objections to certain portions of the declarations of Deborah Breithaupt and Timothy Chung that were submitted in support of Los Angeles's request for appointment of receiver. Karimi did not, however, object to the portions of the Breithaupt declaration that attached certain documents as exhibits, including the receiver's power point preliminary report. And, none of the other opposing parties filed written objections to any of the evidence submitted in support of the Cities' joint request for appointment of a receiver.

On May 19, 2011, after hearing further extensive argument on the receivership issue, the trial court granted the Cities' joint request to appoint Pasternak as the receiver. On May 23, 2011, the trial court executed the order regarding administration of the receivership prepared by the receiver. In pertinent part, that order provided that "Los Angeles and Glendale have presented evidence of their direct and immediate legal and equitable interests in the property and assets that are the subject of the Receivership in the [dissolution action] including all assets identified in India, which interests would be irreparably and substantially prejudiced by any judgment, disposition and/or return of the Receivership property and assets to the parties in the [dissolution action] (Salim Karimi and Jannki Mithaiwala) and [Advanced Development] and [Pacific Housing] before such time that a final judgment may be reached in this Action. [¶] . . . [T]he Order Appointing Receiver dated February 18, 2010 and Supplemental Order dated September 1, 2010 in the [dissolution action shall] be transferred in their entirety upon signature of this Order, to the [Cities' actions] except as expressly modified herein. [¶] . . . David J. Pasternak (the Receiver) shall continue serving and is hereby confirmed as Receiver of the Receivership Entities and Estate identified in the September 1, 2010 Supplemental Order issued in the Marital Dissolution Action and under the terms and conditions set

---

**4** A form of data visualization showing the cumulative effect of sequentially noted positive or negative values.

11

forth herein, shall continue to administer the Receivership Estate in the ordinary course of its business. [¶] . . . [T]he Receiver shall continue to undertake immediate, sole and exclusive possession, custody and control of all property and assets held by, for the benefit of, or improperly transferred from [Advanced Development and Pacific Housing] Salim Karimi, Jannki Mithaiwala, Ajit Mithaiwala and Tina Mithaiwala (hereinafter 'Receivership Individuals'), as well as the stock certificates and proxies for Citilights Estates Pvt. Ltd., Citilights Properties Pvt., Ltd. (hereinafter the 'Indian Companies'), in whatever form or name held and wherever located, and to operate, maintain and conserve the Receivership Estate pending further order of the Court . . . ."

On May 27, 2011, Karimi applied for an order shortening time on a motion seeking clarification of the trial court's April 29 and May 19, 2011, orders regarding the receivership. On June 5, 2011, the receiver filed a status conference report and a first interim report. On June 20, 2011, Ajit filed objections to the receiver's proposed order authorizing the receiver to list various real properties for sale and ordering a nunc pro tunc revision to paragraph 8 of the May 23, 2011, order. On June 20, 2011, the trial court held a status conference and thereafter executed the amended order authorizing the receiver to list various real properties for sale and revising nunc pro tunc the May 23, 2011, order to clarify that "the Receiver shall not disburse any funds to, or for the benefit of Jannki . . . or . . . Karimi for living expenses or attorneys fees for the time period before May 19, 2011." Defendants filed notices of appeal from the order appointing the receiver in the Los Angeles and in the Glendale actions.[5] This court consolidated the appeals in the two actions.

---

[5]     As noted, Karimi and Ajit appealed only from the order entered in the Los Angeles action.

DISCUSSION

## A.     Applicable Legal Principles

### 1.     *Authority for and Role of Receiver*

California Code of Civil Procedure section 564[6] provides in pertinent part: "(a)  A receiver may be appointed, in the manner provided in this chapter, by the court in which an action or proceeding is pending in any case in which the court is empowered by law to appoint a receiver.  [¶]  (b)  A receiver may be appointed by the court in which an action or proceeding is pending, or by a judge thereof, in the following cases:  [¶]  (1) . . . [B]y a creditor to subject any property or fund to the creditor's claim, . . . on the application of the plaintiff, or of any party whose right to or interest in the property or fund, or the proceeds thereof, is probable, and where it is shown that the property or fund is in danger of being lost, removed, or materially injured.  [¶] . . . [¶]  (9)  In all other cases where necessary to preserve the property or rights of any party."

Section 568 provides:  "The receiver has, under the control of the Court, power to bring and defend actions in his own name, as receiver; to take and keep possession of the property, to receive rents, collect debts, to compound for and compromise the same, to make transfers, and generally to do such acts respecting the property as the Court may authorize."  Section 568.5 provides:  "A receiver may, pursuant to an order of the court, sell real or personal property in the receiver's possession upon the notice and in the manner prescribed by Article 6 (commencing with Section 701.510) of Chapter 3 of Division 2 of Title 9.  The sale is not final until confirmed by the court."

California Rules of Court, rule 3.1179(a) describes the role of a receiver as follows:  "**(a) Agent of the court**  [¶]  The receiver is the agent of the court and not of any party, and as such:  [¶]  (1)  Is neutral;  [¶]  (2)  Acts for the benefit of all who may

---

**6**     All further statutory references are to the Code of Civil Procedure unless otherwise indicated.

have an interest in the receivership property; and [¶] (3) Holds assets for the court and not for the plaintiff or the defendant."

"The receiver is an agent and officer of the court and the property in her or his hands remains under the control and continuous supervision of the court. (*Lesser & Son v. Seymour* [(1950] 35 Cal.2d [494,] 499; *Marsch v. Williams* [(1994)] 23 Cal.App.4th [238,] 248; *Turner v. Superior Court* (1977) 72 Cal.App.3d 804, 813 [140 Cal.Rptr. 475]; *People v. Riverside University* [(1973)] 35 Cal.App.3d [572,] 583.) The Court of Appeal has held, 'A receiver merely holds the custody of the property involved in the litigation, in behalf of the court for the real owners thereof, and the court may direct the delivery to the receiver of specific property which is involved in litigation.' (*Steinberg v. Goldstein* [(1954)] 129 Cal.App.2d [682,] 686; accord, *McCarthy v. Poulsen* [(1985)] 173 Cal.App.3d [1212,] 1219.)" (*Gold v. Gold* (2003) 114 Cal.App.4th 791, 806.)


### 2. Standard of Review

"The rule is well established that the appointment of a receiver rests largely in the discretion of the trial court, and that its action in appointing a receiver will not be disturbed by an appellate court in the absence of a showing of abuse of discretion. (*Conklin v. Superior Court*, 1 Cal.(2d) 601 [36 Pac.(2d) 386]; *Anderson v. Anderson*, 124 Cal. 48 [56 Pac. 630, 57 Pac. 81, 71 Am.St.Rep. 17]; *Copper Hill Mining Co. v. Spencer*, 25 Cal. 11; *Lent v. H. C. Morris Co.*, 25 Cal.App.(2d) 305 [77 Pac.(2d) 301]; *Sunset Farms, Inc., v. Superior Court*, 9 Cal.App.(2d) 389 [50 Pac.(2d) 106]; *Lowe v. Copeland*, 125 Cal.App. 315 [13 Pac.(2d) 522]; *Brush v. Apartment & Hotel F. Corp.*, 82 Cal.App. 723 [256 Pac. 285]; *Fox v. Flood,* 44 Cal.App. 786 [187 Pac. 68].)" (*Goes v. Perry* (1941) 18 Cal.2d 373, 381.) In addition to orders appointing receivers, trial "court rulings on receivership matters are afforded considerable deference on review. (E.g., *Lesser & Son, supra,* 35 Cal.2d at p. 503 [confirmation of receiver's sale of partnership assets and real property]; *Golden State Glass Corp. v. Superior Ct.* (1939) 13 Cal.2d 384, 393 [90 P.2d 75] [appointing or refusing to appoint a receiver]; *People v. Riverside University*[*, supra,*] 35 Cal.App.3d [at p.] 582 [111 Cal.Rptr. 68] [confirmation of

receiver's sale of university furniture and equipment].)  Such deference is the rule, even where the court confirms extraordinary action by the receiver, such as a sale of real property.  (E.g., *Lesser & Son*, *supra*, 35 Cal.2d at p. 503; [*People v.*] *Stark* [(2005)] 131 Cal.App.4th [184,] 199, 207-208 [dealership assets and real estate].)"  (*City of Santa Monica v. Gonzalez* (2008) 43 Cal.4th 905, 931.)

Orders appointing receivers and authorizing their actions with respect to the receivership estate rest upon the trial court's "'sound discretion exercised in view of all the surrounding facts and circumstances and in the interest of fairness, justice and the rights of the respective parties.  [Citation.]  The proper exercise of discretion requires the court to consider all material facts and evidence and to apply legal principles essential to an informed, intelligent, and just decision.  [Citation.]  Our view of the facts must be in the light most favorable to the order and we must refrain from exercising our judgment retrospectively.'  (*Cal-American* [*Income Property Fund VII v. Brown Development Corp.* (1982)] 138 Cal.App.3d [268,] 274; see *People v. Riverside University*, *supra*, 35 Cal.App.3d at p. 582.)  Where there is no evidence of fraud, unfairness, or oppression, the court has wide discretion in approving the receiver's proposed actions.  (See *Lesser & Son*, *supra*, 35 Cal.2d at p. 503; *People v. Riverside University*, *supra*, 35 Cal.App.3d at p. 582.)"  (*City of Santa Monica v. Gonzalez, supra*, 43 Cal.4th at p. 931.)

A trial court's exercise of judicial discretion will not be reversed unless it is shown that the court acted in an arbitrary and capricious manner.  "'The term [judicial discretion] implies absence of arbitrary determination, capricious disposition or whimsical thinking.  It imports the exercise of discriminating judgment within the bounds of reason.'"  (*In re Cortez* (1971) 6 Cal.3d 78, 85.)


### B.    Order Appointing Receiver

Defendants contend that there was insufficient admissible evidence to support the appointment of a receiver in either the Los Angeles or Glendale action.  According to defendants, Glendale did not present any evidence in support of its request for a receiver and all of Los Angeles's evidence was based on information and belief.

15

Contrary to defendants' assertion, Los Angeles and the receiver submitted evidence justifying the appointment of a receiver, and Glendale[7] joined in the Los Angeles submission. For example, Los Angeles submitted a power point preliminary report that the receiver presented to the court in the dissolution action. That report was based on the investigation and analysis of the receiver's accountants and attorneys and it concluded that there were "indicia of fraud" in the receivership corporations's records, including invoices from subcontractors in the corporations' files that did not match invoices in the City's files. The receiver's report also emphasized that the receivership corporations lacked adequate financial books and records, which was a serious issue given the number and complexity of the projects and entities and the amount of money involved in the development and operation of the projects. And, the receiver submitted to the trial court a "Waterfall" analysis from his forensic accountant that showed Pacific Housing's overhead and profit for the Glendale City Lights project had been overstated by $1,531,548.

The receiver's power point preliminary report and the forensic accountant's "Waterfall" report supported a reasonable inference of fraud in connection with the development of the 55 low income housing projects. Based on the receiver's report and the lack of corporate records, a reasonable trier of fact could have inferred that more than one of the 15 low income housing projects developed in Los Angeles had been fraudulently developed by the management of Advanced Development and Pacific Housing. Similarly, based on the "Waterfall" report that showed fraud in connection

[7] Glendale argues that pursuant to section 446, the trial court could consider the allegations of its unverified complaint as evidence in support of its application for appointment of a receiver. (See *California State University, Hayward v. National Collegiate Athletic Assn.* (1975) 47 Cal.App.3d 533, 545 [because section 446 relieves a public entity from the necessity of verifying a pleading, an order granting a preliminary injunction could be based on the allegations in the unverified complaint of a public entity plaintiff]; and *Paul v. Wadler* (1962) 209 Cal.App.2d 615, 624 [same].) Because, as discussed below, there was substantial evidence submitted in support of the Cities' requests for appointment of a receiver, beyond the allegations of their unverified complaints, we do not reach the merits of Glendale's contention under section 446.

16

with one of the Glendale low income housing projects, a reasonable trier of fact could have inferred that the other three projects in Glendale may also have been fraudulently developed and that the remaining projects developed in other cities by the same defendants were also tainted with similar fraud and were within the receivership jurisdiction. Therefore, the trial court did not abuse its discretion in appointing a receiver based on such evidence.

Defendants argue that the receiver's power point preliminary report and the forensic accountant's "Waterfall" report were inadmissible hearsay. But defendants forfeited this contention because they did not object to those documents on that basis in the trial court. (See *Keener v. Jeld-Wen, Inc.* (2009) 46 Cal.4th 247, 264-265 [The purpose of the forfeiture doctrine is to encourage a party to bring errors to the attention of the trial court so they may be corrected or avoided and a fair trial had].) Indeed, none of the defendants, except Karimi, filed written objections to the evidence submitted in support of the request for the appointment of a receiver; and Karimi's written objections were directed only to the Chung and Breithaupt declarations and did not address either the receiver's or the accountant's report.[8] In addition, Karimi submitted the power point

---

[8]    Although one or more of the defendants may have, in their written oppositions or at oral argument, voiced a generalized complaint that the City of Los Angeles's motion for appointment of receiver was based solely on information and belief, that complaint appeared to be directed at the Breithaupt declaration and not specifically at the power point or Waterfall reports. To preserve the issue for appeal, more specific objections to the reports were necessary. "Evidence Code section 353, subdivision (a), provides that a court may not reverse a judgment based on error in admitting evidence unless 'an objection to or a motion to exclude or to strike the evidence . . . was timely made and so stated as to make clear the specific ground of the objection or motion.' 'In accordance with this statute, we have consistently held that the "defendant's failure to make a timely and specific objection" on the ground asserted on appeal makes that ground not cognizable. [Citations.]' (*People v. Seijas* (2005) 36 Cal.4th 291, 302 [30 Cal.Rptr.3d 493, 114 P.3d 742].) 'Although no "particular form of objection" is required, the objection must "fairly inform the trial court, as well as the party offering the evidence, of the specific reason or reasons the objecting party believes the evidence should be excluded, so the party offering the evidence can respond appropriately and the court can make a fully informed ruling." [Citation.]' (*People v. Zamudio* [(2008)] 43 Cal.4th [327,] 354.)" (*People v. Valdez* (2012) 55 Cal.4th 82, 130.)

17

preliminary report as an exhibit in opposition to the Cities' request for a receiver, conduct that renders his assertion that the report was inadmissible "disingenuous." (*Ambriz v. Kelegian* (2007) 146 Cal.App.4th 1519, 1527; see Evid. Code, § 1414.)

### C.     Conflict of Interest

Defendants next contend that even assuming there was admissible evidence warranting the appointment of a receiver, the receiver from the dissolution action was not qualified to act as receiver in the Cities' actions due to conflicts of interest. According to defendants, by hiring the receivership corporations' counsel—Buchalter—to act as the receiver's counsel, the receiver violated California Rules of Court, rule 3.1180(3),[9] and such conduct demonstrated that the receiver was not neutral. In addition, defendants assert that because the receiver had previously acted as litigation counsel for an entity that was managing general partner in three Advanced Development limited partnerships—Palms Residential Care Facility, Inc. (Palms)—and because in that litigation the receiver had been adverse to PNC Bank and its affiliates, who were limited investment partners in 15 Advanced Development limited partnerships, the receiver was disqualified from acting as receiver.

In response to defendants assertions about conflicts of interest, the receiver submitted a declaration stating that the trial court in the dissolution action had approved his retention of Buchalter, there were no actual conflicts of interest involving Palms or PNC Bank and its affiliates, and his representation of Palms and adversity to PNC Bank and its affiliates had been properly disclosed to the parties in the dissolution action. For example, the receiver explained that his firm stopped representing Palms Residential Care in June 2010 and that PNC Bank had never taken the position that the receiver had a conflict of interest. He also explained that the court in the dissolution action authorized him to retain Buchalter as counsel for the receiver, which authorization was given after

---

[9]     Rule 3.1180(3) provides: "A receiver must not employ an attorney without the approval of the court. The application for approval to employ an attorney must be in writing and must state: [¶] . . . [¶]  (3)  That the attorney is not the attorney for, associated with, nor employed by an attorney for any party."

18

Karimi and Ajit had been removed from the boards of the receivership corporations making the receiver the sole board member in control of all of the stock of both corporations. In addition, the receiver emphasized that no objection was raised to that authorization and retention.

The declaration of the receiver supported a reasonable inference that the asserted conflicts of interest were not disqualifying. Moreover, the fact that no objections were raised to the alleged conflicts in the dissolution action and the timing of defendants' assertion of the conflicts in the Cities' actions supported an inference that the conflicts were being raised, not because they prejudiced defendants, but rather because the receiver had uncovered and disclosed to the trial court in the dissolution action defendants' questionable conduct in the development of the low income housing projects.


### D. Scope of Receivership Order

Defendants also object to the scope of the receivership established under the trial court's order. According to defendants, none of the Cities' statutory grounds for appointing a receiver authorized extending the receivership to the individual defendants assets. Defendants further argue that none of the Cities' statutory grounds for appointing a receiver authorized the liquidation of defendants' assets and the dissolution of the receivership corporations. Finally, defendants argue that the receivership order, by assuming, without a trial, that defendants are liable of fraud and wrongdoing, violates due process.

Each of defendants' arguments would require us, in effect, to "second guess" the trial court and substitute our own judgment for that of the trial court. Under the governing standard of review—abuse of discretion—we are limited to determining whether, in defining the scope of the receivership, the trial court acted in an arbitrary or capricious manner. Given the evidence in the record, we cannot make such a determination.

As discussed, the receiver's preliminary power point report and the forensic accountant's "Waterfall" report raised a reasonable inference that the receivership

19

corporations and the individuals who owned and operated them had engaged in a complex, systematic, and long-term fraud in connection with the development of the 55 low income housing projects. The evidence of shoddy or nonexistent record keeping and the falsification of invoices and draw requests was compelling and justified an order allowing the receiver to take control of the receivership corporations. Moreover, in the dissolution action Karimi and Jannki each accused the other of transferring millions of dollars from the receivership corporations[10] and the receiver's power point preliminary report supported a reasonable inference that Karimi and Jannki had taken $36 million in undocumented personal loans from the receivership corporations and had secreted at least $25 million in India, all for their own personal benefit and that of Ajit and his wife Tina. Those facts supported a reasonable inference that Karimi, Jannki, and Ajit operated the receivership corporations for their own personal benefit and justified extending the receivership to their individual assets. The record reflects that Ajit was the CEO of the receivership corporations prior to being removed by the receiver, a fact that links him inextricably to the "indicia of fraud" discovered and reported by the receiver. Based on the foregoing evidence, it was not unreasonable or arbitrary for the receiver to conclude that the individuals' assets should be included in the receivership estate. Similarly, based on the number of outstanding claims and lawsuits against the receivership corporations and the lack of adequate books and records, it was not unreasonable or arbitrary for the trial court to conclude that the receiver's recommendation to commence liquidation of the corporations' assets was well taken.

Contrary to defendants' assertions, the court in *Cal-American Income Property Fund VII v. Brown Dev. Corp., supra,* 138 Cal.App.3d 268 did not hold that a receiver is not authorized to sell or liquidate real property assets of a receivership prior to entry of a

---

[10] This fact was before the trial court in a copy of the second interim report of the receiver submitted by the so-called "incoming management" of the receivership corporations. None of the defendants objected to the interim report or disputed the fact that, in the dissolution proceeding, Karimi and Jannki had each accused the other of transferring millions of dollars from the receivership corporations.

judgment.  Instead, the court in that case expressly recognized the power of a receiver to sell real property prior to judgment, but held that, under the facts of that case, the receiver had not established an actual necessity for the sale or demonstrated that the sale had to be consummated at the time requested by the receiver.  (*Id.* at p. 275.)  In doing so, the court gave examples of when a sale would and would not be authorized prior to judgment:  "A court must engage in a two-level analysis, first deciding whether a sale is required and then determining when the sale should take place.  In some cases the court may decide a sale is necessary but leave time for the receiver to obtain a favorable price rather than accede to a single offer discounted to reflect the alleged emergency nature of the transaction.  Naturally, a court will focus on the same factors at both analytical stages, but it will likely allocate different weights to these factors at each step.  For example, evidence the property is not generating capital and could in the future suffer a substantial deficit or be subject to an adverse judgment or foreclosure might be adequate to order a sale but might not be sufficient to order an immediate sale.  On the other hand, evidence the property is faced with imminent destruction or substantial devaluation could justify an immediate sale to any available purchaser."  (*Id*. at p. 275, fn. 7.)

Defendants' claim that their due process rights have been violated is unpersuasive. The receivership in the dissolution action was closely supervised by the trial court, and during the pendency of that action, defendants had ample notice and opportunity to be heard in that venue and demonstrate that the receiver's assertions of widespread fraud were baseless.  Likewise, in the Cities' actions, the trial court held two lengthy hearings and provided defendants ample opportunity to brief and argue the issues, yet the record in those actions is devoid of any credible evidence that defendants are likely innocent of wrongdoing.  To the contrary, the evidence in the record suggested that the Cities were likely to prevail on their assertions of fraud, which likelihood supported the scope of the receivership order.  And, there is no indication that receivership assets have been transferred to satisfy contested creditor claims without a court hearing and approval.

21

## DISPOSITION

The receivership order is affirmed in its entirety.  Los Angeles, Glendale, Vassar City Lights, Metropolitan City Lights, and Glendale City Lights are to recover their costs on appeal.

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

MOSK, J.

We concur:

TURNER, P. J.

KUMAR, J.[*]

---

[*]     Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.